KEENE CORPORATION, Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA et al., Defendants.

Civ. A. No. 78-1011.

United States District Court, District of Columbia.

Jan. 30, 1981.

Harold D. Murry, Jr., Clifford & Warnke, Eugene R. Anderson, Jerold Oshinsky, Anderson, Baker, Kill & Olick, Washington, D. C., for plaintiff.

John P. Arness, David J. Hensler, Hogan & Hartson, Washington, D. C., for defendant Hartford Accident & Indemnity Co.

Dennis M. Flannery, John Payton, Wilmer & Pickering, Washington, D. C., Michael R. Gallagher, Thomas E. Betz, Gallagher, Sharp, Fulton, Norman & Mollison, Cleveland, Ohio, for defendant Ins. Co. of North America.

John F. Mahoney, Jr., Roger W. Heald, Pledger & Mahoney, Washington, D. C., for defendant Aetna Casualty and Surety Co.

Frank W. Gaines, Robert L. Hoegle, Olwine, Connelly, Chase, O'Donnell & Weyher, Washington, D. C., Gerald V. Weigle, Jr., D. Gary Reed, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for defendant Liberty Mutual Ins. Co.

Earl T. Britt, Wayne A. Schaible, Duane, Morris & Heckscher, Philadelphia, Pa., Robert O. Tyler, Williams, Myers & Quiggle, Washington, D. C., for defendant Pennsylvania Manufacturers' Association Ins. Co.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

Plaintiff, Keene Corporation (Keene), is a New York corporation licensed to do business in D.C. The defendants, Insurance Company of North America, Aetna Casualty and Surety Company, Hartford Accident & Indemnity Co., Liberty Mutual Insurance Company and Pennsylvania Manufacturers Association, (PMA)[1] are all insurance companies which wrote policies of insurance for general liability for Keene or its subsidiary-predecessors. Plaintiff seeks a declaratory judgment under the policies of the respective defendants.

From time to time, Keene or Keene Building Products Corporation (KBPC), a wholly owned subsidiary, acquired all of the right, title and interest in the following manufacturers of insulation containing asbestos: Ehret Magnesia Manufacturing Co. (Ehret), Baldwin-Hill (B–H) and Baldwin-Ehret-Hill (BEH).

In 1976, Keene closed out all of its thermal insulation products containing asbestos and has neither made nor sold them since that time.

Recently, more than 5,000 cases have been filed against Keene or its predecessors, alleging personal injury or wrongful death as a result of the use of its products which contained asbestos insulating material. The injuries claimed are asbestosis, mesothelioma and bronchogenic carcinoma.

Keene has called upon the defendant insurance companies to defend the suits and indemnify Keene under the general liability policies whether the action is against Keene, Ehret, B–H, BEH or KBPC. The defendants have failed to do so at considerable cost to Keene for defense and/or settlement of claims.

The insurance companies provided coverage as follows: INA insured BEH from December 31, 1961 through August 23, 1968; Hartford insured Keene and predecessors from August 23, 1971 through October 1, 1974; Liberty insured Keene from August 23, 1967 through August 23, 1968, and again from October 1, 1974 through September 30, 1980, and Aetna insured Keene from August 23, 1968 through October 1, 1971.[2] All of these policies contained products coverage.

Plaintiff has filed a motion for partial summary judgment, leaving for later, the question of damages.

Aetna has alleged that this Court has no jurisdiction to consider the matter. It claims that no case or controversy exists because the 5,000 plus cases have not been impleaded.

A declaratory judgment is an appropriate means for resolving controversies relating to the extent of coverage under a policy of insurance. *Ins. Co. of No. Am. v. Forty-Eight Insulations*, 451 F.Supp. 1230 (1978), *aff'd* 633 F.2d 1212 (6th Cir., 1980);

---

1. Neither Keene, its predecessor companies, nor PMA has located any policies of insurance, only index cards of policy numbers. The Court has dismissed PMA in a separate opinion filed this date.

2. Pursuant to the policies in effect on and after October 1, 1976, Liberty has agreed to defend and indemnify Keene on a deductible basis in which Keene bears most of the cost.

*Friestad v. Travelers Ind. Co.,* 452 Pa. 417, 306 A.2d 295 (1973); *Crown Cork & Seal, Inc. v. Aetna Casualty & Surety Co., et al.,* Pa.Ct. of Common Pleas (Oct. 9, 1980). Moreover, the determination of the respective rights and duties of the various companies is a proper subject for summary judgment.

■ This Court makes no determination as to the liability or other pertinent matter on the individuals' suits against Keene and its former affiliates. Nothing contained herein shall prevent the insurance company or companies involved from raising all pertinent defenses. However, it is a case of controversy when a company which has bought coverage cannot get representation in lawsuits filed against it or indemnification because of arguments between the insurance companies themselves and the insured. The result is that the insured is without the representation it has paid for. Accordingly, Aetna's motion for summary judgment, which the Court more properly treats as a motion to dismiss, is denied.

Liberty, INA and Aetna maintain that *manifestation* of the bodily injury during the policy period triggers the coverage. Keene and Hartford, on the other hand, maintain that *exposure* to asbestos is the controlling policy period for a person who develops one of the asbestos caused ailments. The insurance policies provide coverage for bodily injury caused by an occurrence during the policy period. The Court must therefore decide when the bodily injury occurs in asbestos caused ailments.

This Court has heard testimony from two medical experts on asbestos related diseases, both of whom agree that the diseases asbestosis, mesothelioma and bronchogenic carcinoma have origins in concentrated inhalation of asbestos fibers, and that these diseases are cumulative and progressive. The physical symptoms caused by these three diseases do not manifest themselves to an injured individual until years after the initial inhalation of asbestos. With asbestosis, sometimes 15 or 20 years will pass before an individual develops shortness of breath and a cough. The waiting period is even longer with those who develop bronchogenic carcinoma due to asbestos inhalation. However, it is clear that bodily injury has occurred long before these symptoms develop.

The Court will first address the etiology of asbestosis as the overwhelming majority of underlying suits allege injuries due to asbestosis. Dr. Kleinerman attempted to equate the occurrence of the injury or disease in asbestosis with the advanced development of fibrosis, which he said generally occurs years after exposure.[3] However, he also stated that "any amount of fibrosis constituted injury" which indicates that the initial bodily insult occurs much earlier.

Dr. Gaensler indicated that tissue injury in an individual who develops asbestosis begins "virtually the moment that asbestos fibers [reach] the alveoli", and that a tissue injury could be ascertained by biopsy within 24 to 48 hours after the concentrated inhalation of asbestos. Further, he testified that scarring and the deposition of collagen could occur within weeks of inhalation. As a practical matter, this bodily injury could only be ascertained in its early stages where the patient had died in an accident and an autopsy was performed.

■ The Court finds that the original bodily injury and insult to the lungs in asbestosis cases occurs at or near the first heavy inhalation of the fibers and continues progressively. Bodily injury is injury to the tissue, not just diagnosable disease. It does not matter that this bodily injury is not diagnosable because of the limitations of medical equipment at the time of the original insult.

---

**3.** Asbestos fibers irritate the extremely delicate lung tissue when inhaled. They land in the alveoli where it is suspected they cause mechanical damage due to their stiffness. Additionally, in an effort to cleanse the lung, macrophages attempt to engulf the fibers. The fibers are too long frequently to be engulfed and the macrophages die, releasing proteolytic enzymes which further damage the lung. The end result of this tissue injury and reaction to the asbestos fibers is the formation of collagen and scar tissue, which is termed fibrosis.

While this matter has been pending before this Court, a similar question has been before Chief Judge Feikens of the United States District Court for the Eastern District of Michigan and the United States Court of Appeals for the Sixth Circuit which affirmed his decision. *INA v. Forty-Eight Insulations, supra.*

We adopt the reasoning of Circuit Judge Keith who wrote for the majority:

> . . . the proponents of the manifestation theory urge that we treat asbestosis the same as any other disease and that we not make any "special rules" for the cumulative disease situation which asbestosis presents.
>
> We cannot agree. Cumulative disease cases *are* different from the ordinary accident or disease situation. First, the underlying theory of tort liability is that the asbestos manufacturers continually failed to warn the asbestos workers and that, as a result of this, continuous breathing of asbestos particles allowed asbestosis to progress to the point where it caused death or injury. The insurance policies before us are comprehensive general liability policies which are designed to insure the manufacturer against products liability suits. The contracting parties expect coverage to parallel the theory of liability. Otherwise . . . the manufacturer's coverage becomes illusory since the manufacturer will likely be unable to secure any insurance coverage in later years when the disease manifests itself.
>
> Second, a question might exist as to whether the microscopic tissue injury which occurs upon initial inhalation of asbestos should be defined as the occurrence of a "disease" or "bodily injury". However, there is universal medical agreement that the time when asbestosis manifests itself is not the time when the disease occurred. No doctor would say that asbestosis occurred when it was discovered.

*Id.,* 633 F.2d at 1219.

The cases relied upon by the proponents of manifestation are inapposite because they are primarily statute of limitations cases, workers' compensation cases and health insurance cases. *See, Tijsseling v. Gen. Acc. Fire & Life Assurance Corp., Ltd.,* 55 Cal.App.3d 623, 127 Cal.Rptr. 681; *Met. Life Ins. Co. v. Reynolds,* 48 Ariz. 205, 60 P.2d 1070 (1936); *Travelers Ins. Co. v. Cardillo,* 225 F.2d 137 (2nd Cir. 1955) *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955) ("Last employer" or "last exposure" rule). These distinctions have been dealt with in detail by Judge Keith, *INA v. Forty-Eight Insulations, supra,* 633 F.2d at 1220–1222.

Further support for the exposure theory comes from *Tenneco Chemicals v. Employers Mutual Liability Ins. Co.,* 76 Civ. 809 (S.D.N.Y.) (April 8, 1977). In *Tenneco,* plaintiff was injected with a radioactive drug for testing purposes. The drug broke down improperly and plaintiff suffered from radiation exposure for a long period of time. The insurance company covered the drug company starting two years after the injection and the policy expired eleven years before diagnosis. The court held against the insurance company, holding that occurrence coverage was possibly the broadest coverage and that the injury had occurred during the period of insurance coverage. Chief Judge Feikens relied upon this case as does this Court. *INA v. Forty-Eight Insulations, supra,* 451 F.Supp. at 1242.

It should be noted particularly that if the manifestation theory were adopted, manufacturing companies would be unable to buy full products insurance protection. No insurer would undertake to protect completely a company which had exposed uncounted workers to a hazard for a period of years. This refusal would be likely in the instant case because of the probability of thousands of asbestos related injuries or diseases manifesting themselves at some future time.

The unreality of the manifestation theory becomes even clearer when it is realized that in such a situation those companies which were paid premiums to cover the risk at the time of manufacture and exposure would be free and clear from fiscal responsibility. In this connection, it should be

pointed out that the partial insurance available to Keene at the present time calls for large deductible sums at exorbitant premiums.

■ The Michigan Court limited its opinion to asbestosis, but this Court finds that the exposure to and heavy inhalation of asbestos triggers the insurance coverage for the diseases mesothelioma and bronchogenic carcinoma as well. The link between asbestos and mesothelioma is well-established. Mesothelioma is a cancer of the mesothelial cells which line the chest walls and surround the organs of the chest cavity. It generally occurs 20 years or more after there has been excessive inhalation of asbestos fibers in those individuals who develop it. While it is easily discovered and diagnosed shortly after it develops, there is no satisfactory treatment of the disease and the victim almost always dies within several years of the tumor's initial development. Dr. Gaensler testified that the initial injury leading to the disease occurs when an asbestos fiber travels down the lung's airways, reaches an alveolus on the edge of the lung, perforates the lung, and, with breathing, irritates the tissue. This process can occur within several days, but it may take as long as one to two months.

Bronchogenic carcinoma, a group of tumors that arise from different parts of the lung, is also linked with asbestos inhalation, though it has other known causes. Dr. Gaensler stated that significant asbestos exposure increases a smoker's chances of developing bronchogenic carcinoma five to tenfold.[4] He further testified that the irritation caused by the asbestos fibers, which is a factor in the eventually diagnosed bronchogenic carcinoma, begins immediately on inhalation of asbestos.

■ An obligation to defend Keene exists on the part of each insurance company which carried products liability coverage during the period of time in which the claimant alleges he/she was exposed to Keene's or its subsidiary predecessors' asbestos products. Keene asserts that it should not be required to contribute to its defense even if the exposure claimed fell at a time when Keene was uninsured. Keene argues that if it were covered at any time, it should be afforded representation. The Court cannot agree with that argument and finds that Keene stands in the same position as the insurance companies. If the years in question were covered by insurance, then obviously Keene should be both represented and indemnified, but if not, it should pay its pro rata share of both. *INA v. Forty-Eight Insulations, supra,* 633 F.2d at 1224–1225.

For the foregoing reasons, the Court holds that:

Insurance coverage is triggered when an injured claimant is exposed to asbestos products. Each insurance company on the risk during the times of claimant's exposure shall bear its pro rata share of the cost of representation and indemnification for each such claim. The limit of liability for each company shall be based on its maximum limit per occurrence for each such policy. The terms "insurance company" or "each company" shall be equally applicable to Keene if self-insured or uninsured during any of the time in question.

---

4. Dr. Gaensler explained that the correlation between asbestos inhalation and bronchogenic carcinoma in non-smokers is not known because of its rare occurrence which makes carrying forth statistically significant studies extremely difficult.