**REMINGTON ARMS COMPANY,**
**Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE**
**COMPANY, Defendant.**

**Civ. A. No. 89–420–JLL.**

United States District Court,
D. Delaware.

Dec. 30, 1992.

Donald E. Reid and Alan J. Stone, Morris, Nichols, Arsht & Tunnell, and Richard A. Paul and Pamela Meitner, E.I. DuPont de Nemours & Co., Wilmington, Del., and Joanne B. Grossman and William F. Greaney, Covington & Burling, Washington, D.C. (of counsel), for plaintiff.

Lawrence S. Drexler, Elzufon, Austin & Drexler, P.A., Wilmington, Del., and John C. Sullivan, Richard S. Manella, and Geoffrey J. Alexander, Manta and Welge, Philadelphia, Pa., (of counsel), for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. INTRODUCTION

■ Defendant, Liberty Mutual Insurance Company, has brought this motion before the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking summary judgment on plaintiff's failure to prove the existence and contents of certain missing insurance policies. (Docket Item ["D.I."] 343.) Plaintiff, Remington Arms Company, in responding to defendant's motion, has requested permission to move for summary judgment in its favor on the same issue. (D.I. 382 at 4 note 3.) As plaintiff has demonstrated, this Court has the inherent power to enter summary judgment, *sua sponte*, against a moving party that has offered no evidence in support of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). While the defendant has, in fact, offered no evidence in support of its motion, for the reasons stated below, this Court will deny summary judgment to both parties on the issue of the existence and contents of the missing insurance policies.

## II. FACTS

On August 11, 1989, plaintiff initiated this action for declaratory relief and damages arising from defendant's alleged breach of its contractual obligation to defend and indemnify plaintiff under various primary and excess liability insurance policies for claims related to environmental contamination at three sites. (D.I. 1 and D.I. 382.) This motion for summary judgment, however, does not deal with the actual subject matter of the litigation but rather with the tangential, preliminary issue of the existence and contents of missing insurance policies. While plaintiff has alleged (D.I. 1 and D.I. 382) and defendant does not deny that defendant provided plaintiff with some sort of liability insurance from at least 1936 until 1980, it became apparent to the parties in the course of discovery that certain policies were unable to be located. As a result, plaintiff has conceded that it does not possess sufficient secondary evidence to establish the existence or terms of any policies issued by Liberty Mutual prior to 1957. (D.I. 382 at 2 n. 2; D.I. 363.)

It is presently undisputed that copies of the comprehensive general liability (CGL) policies issued by Liberty Mutual to Remington Arms have been produced for all years from 1957 through 1980 with the exception of the following: 1957–64, 1966, 1968–69, 1972. (D.I. 372; D.I. 382.) It is also undisputed that Liberty Mutual issued umbrella excess policies to Remington for the years 1970, 1971, and 1974 through 1980. (D.I. 382 at Exhibit H.) The parties have not, however, been able to produce the umbrella excess policies allegedly issued in the following years: 1965 through 1969, 1972 and 1973. (D.I. 382 at Exhibit H, and at 2.)

For the purposes of this motion the only question this Court must determine is whether or not the voluminous evidence offered by plaintiff is sufficient or insufficient to establish the existence and contents of the missing policies *as a matter of law*.

# 1422

### III. THE STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rules 56(a) and 56(d) provide that summary judgment may be granted on specified issues, while the remainder of a case proceeds to trial. The appropriate inquiry is whether there is a need for a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "In other words, [are] there any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

█ Plaintiff has submitted voluminous evidence to establish the terms of the missing policies. Defendant has offered no evidence to contradict the evidence offered by plaintiff. Defendant's only argument in support of its motion for summary judgment on the issue of the existence and contents of the missing policies is that plaintiff has failed to offer sufficient evidence to carry its burden of proof. This Court finds that plaintiff has presented sufficient evidence to make a prima facie case of the existence and contents of the missing policies, and thus to survive defendant's motion for summary judgment on this issue. However, while plaintiff's evidence is uncontested, this Court finds that the circumstantial nature of plaintiff's evidence requires numerous inferences to be drawn and the drawing of those inferences rightly belongs to the province of the finder of fact.

In fact, the Federal Rules of Evidence specifically dictate that the determination of whether the existence and contents of a lost writing have been adequately proven is a matter for the finder of fact. The Federal Rules of Evidence which control the matter at hand are Rules 1002 and 1004. Federal Rule of Evidence 1002, commonly referred to as the best evidence rule provides:

**Rule 1002. Requirement of Original**

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.

Rule 1004 provides in relevant part:

**Rule 1004. Admissibility of Other Evidence of Contents**

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—

(1) **Originals Lost or Destroyed.** All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; ...

Rule 1008 specifically addresses which requirements of Rules 1002 and 1004 are to be apportioned to the court and which are to be apportioned to the finder of fact. Federal Rule of Evidence 1008 states in relevant part:

**Rule 1008. Functions of Court and Jury**

When the admissibility of other evidence of contents of writings, recordings, or photographs under these rules depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is ordinarily for the court to determine in accordance with the provisions of rule 104. However, when an issue is raised (a) whether the asserted writing ever existed, or ... (c) whether other evidence of contents correctly reflects the contents, the issue is for the trier of fact to determine as in the case of other issues of fact.

A leading treatise on Evidence also stresses that the question of whether or not a party has offered sufficient evidence to prove the contents of a lost writing is a matter for the trier of fact to decide. "[T]he opponent (of the party offering the secondary evidence) may attack the sufficiency of the secondary evidence including the credibility of the witness. This attack, however, goes not to admissibility but to the weight of the evidence and is a matter

for the trier of fact to decide." Jack B. Weinstein, *Evidence* ¶ 1004[01].

Thus, although both parties have stated that all relevant evidence has been presented to the Court, conclusions still must be drawn from that evidence. It is this drawing of conclusions that creates a triable issue of fact. In order for this Court to decide this matter at the summary judgment stage, this Court would have to make a determination that no reasonable finder of fact could find for one of the parties. At the summary judgment stage, this Court would be deciding not that the evidence as presented was sufficient to support one conclusion or another, but rather that, as a matter of law, the evidence presented could only support one conclusion.

## IV. STANDARD OF PROOF

■ Before any determination concerning the sufficiency of the evidence can be made, a preliminary issue regarding the required standard of proof must be resolved. The defendant has argued that the standard of proof for establishing the terms of a missing or lost insurance policy is the standard of clear and convincing evidence. The plaintiff contends that the standard of proof is the preponderance of the evidence standard. Both parties cite relevant and conflicting case-law to support their positions.

The defendant relies on a line of cases, the most recent of which is *Boyce Thompson Inst. for Plant Research, Inc. v. Insurance Co. of North America*, 751 F.Supp. 1137 (S.D.N.Y.1990) which clearly states that a party must prove the terms and existence of missing insurance policies by clear and convincing evidence. The problem with that line of cases is that (a) not one case in the line ever gives a justification for the heightened standard of proof; (b) a leading treatise on evidence contradicts that line of cases by referring to the preponderance of the evidence as the normal standard of proof in all civil cases and then detailing a list of a very limited number of specific instances of a higher standard which does not include missing insurance policies; (c) no circuit court has addressed the issue; and (d) courts within the same district have utilized different standards. *Compare Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 632 F.Supp. 1213 (S.D.N.Y.1986) (Court discusses sufficiency of the evidence of the terms of missing insurance policies for the purposes of summary judgment. Court never refers to a clear and convincing standard. In the absence of such a specific reference it is reasonable to assume the court used the preponderance standard which is the norm for civil actions), with *Boyce Thompson Inst. for Plant Research, Inc. v. Insurance Co. of North America*, 751 F.Supp. 1137 (S.D.N.Y.1990) (court sitting in same district as *Burroughs Wellcome* court never addresses *Burroughs Wellcome* precedent and relies on an earlier case which adopted a Pennsylvania clear and convincing standard without explanation; *see* discussion *infra*).

The *Boyce* court stated: "[b]ecause lost insurance instruments are a common problem, a party seeking to recover upon a lost instrument must prove its former existence, execution, delivery and contents by clear, satisfactory, and convincing evidence *See Emons Industries, Inc. v. Liberty Mut. Fire Ins. Co.*, 545 F.Supp. 185, 188 (S.D.N.Y.1982)". *Boyce Thompson Inst. for Plant Research, Inc. v. Insurance Co. of North America*, 751 F.Supp. 1137, 1140 (S.D.N.Y.1990). This Court fails to see the logic in creating a heightened standard of proof because a matter is a common problem. As plaintiff effectively points out in its surreply brief "[g]arden-variety automobile accidents and breach-of-contract cases are also 'common problems', but no one would argue that the claimants in such actions must prove the elements of their case by anything other than a preponderance of the evidence". (D.I. 406 at 2.) There might be a justification for a heightened standard of proof for all lost writings, but the fact that lost writings are a common problem does not provide such a justification.

In addition, the *Boyce* court relies on the *Emons* case as its authority for the standard. *Emons*, in turn, wholly relies on

*Keene Corporation v. Insurance Co. of North America,* 513 F.Supp. 47 (D.D.C. 1981) in which the District Court for the District of Columbia, applying Pennsylvania law stated that the burden of proof required a showing by "clear and convincing evidence that the insurance policies existed and covered" the suits. *Keene Corporation v. Insurance Co. of North America,* 513 F.Supp. 47 (D.D.C.1981). The *Keene* court, however, cited no authority for that standard. In essence, there is a chain of support with no anchor. Like a parrot repeating words without any understanding of their meaning, each case in the chain cites a standard whose origin or justification is never made apparent.

Plaintiff cites an equally varied list of cases which have applied the preponderance of the evidence standard that is the norm in civil cases, including an opinion from the District Court of Alaska which addresses the issue of lack of appropriate circuit precedent. *Mapco Alaska Petroleum, Inc. v. Central Nat'l Ins. Co.,* 784 F.Supp. 1454 (D.Alaska, 1991). *See also Mission Ins. Co. v. General Steel & Wire Co.,* No. C. 532 184. op. at 2 (Cal.Super.Ct. Feb. 10, 1992). In addition to offering support for its position in the form of cases which have applied the preponderance standard, plaintiff also urges this Court not to count cases but rather to undertake a determination based on the dictates of fairness and common sense. This Court agrees with plaintiff that "the choice between the traditional preponderance standard and the heightened clear and convincing test should turn not on the arithmetical exercise of counting decisions on either side of the ledger". (D.I. 382.) This Court considers an inquiry into the basic principles of evidence an appropriate method of deciding the matter and thus will look to the predominant authorities on Evidence for guidance on this issue.

As stated *supra* the Federal Rules of Evidence which control the matter at hand are Rules 1002, 1004 and 1008. Federal Rule of Evidence 1004 specifically allows for the use of other evidence of the contents of a writing if the original has been lost or destroyed. The advisory committee notes to Rule 1004 read in relevant part:

Basically the rule requiring the production of the original as proof of contents has developed as a rule of preference: if failure to produce the original is satisfactorily explained, secondary evidence is admissible. The instant rule specifies the circumstances under which production of the original is excused.

The rule recognizes no "degrees" of secondary evidence. While strict logic might call for extending the principle of preference beyond simply preferring the original, the formulation of a hierarchy of preferences, and a procedure for making it effective is believed to involve unwarranted complexities. Most, if not all, that would be accomplished by an extended scheme of preferences will, in any event, be achieved through the normal motivation of a party to present the most convincing evidence possible and the arguments and the procedures available to his opponent if he does not.

While the advisory committee notes are addressed to the issue of preference of types of evidence, they are relevant to a discussion of the heightened standard of proof for two reasons. First, because the notes and rules are silent as to any heightened standard, and thus an inference that none was intended can be reasonably drawn, and second, because the committee's reasons for rejecting a scheme of preferences is equally applicable to the question of a heightened standard of proof. The safeguards inherent in "[t]he normal motivation of a party to present the most convincing evidence possible and the arguments and the procedures available to his opponent if he does not" appears to be as logical a reason for rejecting a heightened standard of proof as it does for rejecting a hierarchy of evidentiary preferences.

This interpretation of Rule 1004 as not requiring special evidentiary standards for proving the existence or contents of a lost writing once the lost writing is shown to have fallen within the ambit of Rule 1004 finds further support in Weinstein's treatise on Evidence.

[O]nce the conditions of Rule 1004 are met, the party seeking to prove the contents of a writing, ... may do so by any kind of secondary evidence ranging from photographs and handwritten copies to oral testimony of a witness whose credibility is suspect. Of course, the opponent may attack the sufficiency of the secondary evidence including the credibility of the witness. Jack B. Weinstein, *Evidence* ¶ 1004[01].

Weinstein specifically refers to the sufficiency of the evidence and never states that the standard of proof is higher than the norm for civil cases. It can therefore be assumed that his treatise does not advocate a higher standard of proof.

Such a conclusion is confirmed in Wigmore's treatise which directly addresses the issue of the "measure of jury's persuasion" stating:

In *civil cases* the extreme caution and the unusual positiveness of persuasion required in criminal cases do not obtain. It is customary in this field to attempt to define the quality of persuasion necessary by an expression .. that there must be a *"preponderance of evidence"* in favor of the demandant's proposition. Wigmore § 2498.

After having established that the preponderance of the evidence standard is the standard of proof for all civil cases, the Wigmore treatise engages in a discussion of any and all deviations from that standard, including the clear and convincing standard.

[A] stricter standard, in some such phrase as "clear and convincing proof," is commonly applied to measure the necessary persuasion for a charge of *fraud,* or of *undue influence;* for the existence and contents of a *lost deed or will;* for a *parol gift* or an *agreement to bequeath or devise* by will or to *adopt;* for *mutual mistake sufficient to justify reformation of an instrument;* for a *parol or constructive trust;* for an *oral contract* as a basis for specific performance; for impeaching a *notary's certificate* of acknowledgment; for prior *anticipatory use of an invention;* for an agreement to hold a *deed absolute* as a *mortgage;* and for *sundry classes of cases* in local practice. Wigmore § 2498 (emphasis in original) (footnotes omitted).

The Wigmore treatise has given an exhaustive list of exceptions to the preponderance of the evidence standard. Not only is the example of lost insurance policies not included in a list which spares no level of particularity, but a search for the rationale behind the enumerated exceptions demonstrates to this Court that the problem of lost insurance policies does not mandate a standard of clear and convincing evidence. The examples listed in the above cited passage of Wigmore have one common denominator; they all involve situations in which the danger of fraud is highly prevalent.[1]

Oral contracts and wills present unique evidentiary problems because the opportunity for fraud is extensive. Various statutes of fraud have traditionally addressed the problem of oral contracts, while the arcane mechanics of estate law have addressed themselves to the unique vulnerability to fraud of a written document which does not become effective until its author is dead and thus permanently unavailable to testify. The need for a higher standard of proof for reformation of contract cases is also due to an inherently high probability of fraud since those cases often include a situation in which the veracity of a written document which on its face purports to be the agreement of the parties is being contested by one of the parties. Courts are understandably loathe to rewrite a document which has been produced.

Missing insurance policies are in no way analogously vulnerable to fraud because the nature of the documents used to prove the existence and contents of lost or missing insurance policies are inherently more reliable than the majority of papers offered into evidence. The evidence used to establish the existence and contents of these

---

**1.** In fact, the Connecticut case which defendant cites as supporting a "clear and convincing" standard, *Lopinto v. Haines,* 185 Conn. 527, 441 A.2d 151 (1981) was addressing the issue of a unilateral mistake coupled with actual or constructive fraud.

policies is usually comprised of business records and standard forms made by and found in the possession of the party against whom they are being offered. The testimony used to establish the existence and terms of the missing policies is in large part testimony of the employees of the party against whom it is being offered. The Federal Rules of Evidence have already acknowledged the inherent safeguards of the veracity of this type of evidence in the exception to the hearsay rules. *See, e.g.,* Fed.R.Evid. 803(6), (7) and (16).[2] The same rationale which permits this type of evidence a presumption of reliability in the face of the inherent danger of hearsay convinces this Court that the use of such evidence does not merit a requirement of a higher standard of proof. While certain basic facts still must be proven, such as whether or not a particular form was issued to the insured in question and whether or not additional individually negotiated terms were incorporated into an agreement, there is no logic in requiring these ordinary elements of a claim to be proven by more than a preponderance of the evidence.

Finally, no fraud has been alleged in this case. In fact, defendant has not disputed the veracity of any of the evidence offered by plaintiff. The only dispute has been whether the evidence produced by plaintiff has been sufficient to carry plaintiff's burden of proof. Since this Court finds a danger of fraud to be the only rationale for a heightened standard of proof and since this Court finds no particular danger of fraud in the case of missing or lost insurance policies of the type at issue in the present case, this Court holds that the standard of proof is the "preponderance of the evidence" standard usually applied in civil cases.

This Court notes that its holding should not be read to imply that plaintiff's evidence would be unable to meet a clear and convincing standard were that the standard in effect; that issue has not been reached by this Court since the decision that the appropriate standard of proof is a preponderance of the evidence has rendered that issue moot at this time.

## V. DISCUSSION

### A. *The Admissibility of Secondary Evidence*

██ As discussed at length *supra,* the Federal Rules of Evidence Rule 1002 and 1004 provide that the contents of a lost writing may be proven by secondary evidence if the original has been lost or destroyed and the loss or destruction is not the result of the proponent's bad faith. Thus, in order for secondary evidence of the contents of the writings to be admissible, the proponent must make a threshold showing that those two elements, loss or destruction of the documents and the absence of bad-faith, have been met. Whether the proponent has met the prerequisites for the use of secondary evidence is a preliminary question of law to be resolved by the Court. Federal Rule of Evidence 1008. In order to prove that the documents have been lost or destroyed the proponent may use circumstantial evidence such as evidence of a diligent but unsuccessful search for the document. *United States v. McGaughey,* 977 F.2d 1067 (7th Cir.1992). "Loss or destruction may sometimes be provable by direct evidence but more often the only available evidence will be circumstantial, usually taking the form that appropriate search for the document has been made without discovering it." *Id.* at 1071 (citing McCormick on Evidence, § 237 at 715 (3d ed. 1984)). "By far the most common means of proving loss or destruction is the use of circumstantial evidence showing a diligent but unsuccessful search and inquiry for the document." (5 Weinstein's Evidence ¶ 1004[1][05] at 1004–18 (1983)).

---

**2.** The advisory committee notes to Federal Rule of Evidence 803 discuss the rationale for the inherent reliability of business records which justifies the exceptions. "The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by the duty to make an accurate record as part of a continuing job or occupation." Fed.R.Evid. 803(6) advisory committee's notes.

■ There is no debate concerning the diligence of plaintiff's search in this case. Professor John D. Long, who was the expert witness designated by defendant for the purpose of testifying to the adequacy of plaintiff's oath, described the search in his deposition as "... diligent and near exhaustive." (D.I. 383 at A507.) Defendant has contested neither the diligence of the search nor the fact that the documents have been lost or destroyed. Thus, it is appropriate in this case to admit secondary evidence to prove the existence and contents of the lost policies. As discussed *supra*, the Federal Rules of Evidence do not contain a hierarchy of preferences regarding the admissibility of secondary evidence, thus any relevant secondary evidence is admissible if otherwise in accord with the Federal Rules of Evidence.

### B. *The Sufficiency of the Evidence*

The plaintiff has produced over 2000 pages of evidence including:

1. A plethora of Liberty Mutual documents including, in part; business records and sample insurance policies; policies from a year prior to ones in question which have been marked-up for renewal and policies for a year subsequent to ones in question which have been marked as renewals; policy jackets, internal memoranda which include direct references to the policies at issue; and retrospective premium reports which also specifically reference the policies at issue.

2. Uncontroverted deposition testimony of numerous Liberty Mutual employees testifying to terms and times of policies as well as identifying and explaining the Liberty Mutual documents listed above, including testimony that no other policy jackets existed other than the samples shown for certain years in question.

3. Remington's own internal documents and records reflecting premium and dividend payments from the policies in question.

4. Declaration of former Remington general counsel and Liberty Mutual employee Ronald A. Partnoy who had extensive experience with liability coverage in general, and Remington's insurance in particular.

The evidence offered by Remington is more than sufficient to establish a genuine issue of fact as to the existence and contents of the missing policies. Liberty Mutual's motion for summary judgment appears to be based on the same misconception which fuels most of its evidentiary objections. Liberty Mutual argues that each piece of Remington's evidence can not support a finding of the existence or terms of a policy. The whole, however, is greater than the sum of the parts. Remington's evidence need not, and in fact should not, as Liberty Mutual appears to argue, be viewed in a vacuum. Remington's evidence must be taken in context.

Liberty Mutual objects to Remington's use of much of the deposition testimony of Liberty Mutual employees. Liberty Mutual claims that many of those employees lack the personal knowledge necessary to testify. Liberty Mutual errs in assuming that each witness is testifying to the ultimate issue of the case. Remington has not painted its case with such broad strokes, but rather has constructed an intricate mosaic, tile by tile. For example, Liberty Mutual specifically objects to the deposition testimony of Virginia Keeler, stating that Keeler herself testified that she had "never seen a copy of a CGL policy issued to Remington before 1975." (D.I. 401 at 8 n. 11.) However, Ms. Keeler was not testifying to the existence of the CGL policy. Ms. Keeler testified, in relevant part, that Remington had umbrella excess liability insurance with Liberty Mutual from 1965 continuously through 1980; that it would be unusual for Liberty Mutual to issue umbrella excess coverage without providing the underlying comprehensive general liability ["CGL"] coverage; and that in her experience with Liberty Mutual, she could not, in fact, recall one instance where they did provide umbrella insurance without providing the underlying CGL policy. (D.I. 385 at A1347–50.) Ms. Keeler's testimony clearly goes to the existence of umbrella coverage and the fact that existence of umbrella coverage can create a presumption of the existence of comprehensive general liability ["CGL"] coverage. That testimony, taken

in conjunction with numerous other bits of evidence offered by Remington, could create a reasonable inference for a trier of fact to conclude that comprehensive general liability coverage existed for certain years. Remington has attempted to prove the terms of the missing policies through a variety of other inferences which are often distinct from the inferences offered to prove the existence of the policies. While Remington must prove both the existence and terms of the policies there is no requirement that any one piece of evidence standing alone prove both elements.

## VI. CONCLUSION

This Court finds that Remington's evidence, when taken as a whole, presents sufficient evidence to create a triable issue of fact concerning the existence and contents of the missing insurance policies and thus this Court will deny defendant's motion for summary judgment. This Court also finds that although all the evidence presented in this case is uncontroverted, genuine issues of fact exist as to the both the inferences to be drawn from the evidence presented and the sufficiency of the evidence itself and thus this Court will also deny plaintiff's request for summary judgment. An order will be entered, forthwith, in accordance with this opinion.