**AMERICHEM CORPORATION, Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.**

**No. 5:93–CV–47.**

United States District Court, W.D. Michigan.

Jan. 9, 1995.

·Michael H. Perry, Fraser, Trebilcock, Davis & Foster, PC, Lansing, MI, for plaintiff.

Stephen M. Kelley, Kelley, Casey & Clarke, P.C., Detroit, MI, for defendant.

### *OPINION*

BENJAMIN F. GIBSON, District Judge.

Pending before the Court is defendant's motion for partial summary judgment. · For the reasons set forth below, the Court will deny defendant's motion.[1]

---

**1.** The Court determines that oral argument    would not assist the Court in deciding the issues

## I.

Plaintiff Americhem Corporation ("Americhem") blends, repackages, and sells industrial solvents, chemicals, and lubricants. From 1975 to 1980, Barrels, Inc., reconditioned containers for Americhem. In an action against Americhem and others, the Michigan Attorney General and the Director of the Michigan Department of Natural Resources claim that Barrels, Inc., is a site of environmental contamination. They further claim that Americhem and the other defendants must remediate the contamination pursuant to Michigan's Environmental Response Act. Mich.Comp.Laws Ann. §§ 299.601 *et seq.* (West 1994 Supp.).

After defendant St. Paul Fire and Marine Insurance Company ("St. Paul") denied Americhem's claim for defense and indemnification, Americhem filed this action. Americhem alleges that it entered into five general liability insurance policies with St. Paul, with limits of liability no less than $100,000.00, which provided coverage from October 1, 1975, though October 1, 1978, and from May 1, 1978, through May 1, 1980 ("the 1975–1980 policies").[2]

St. Paul does not contest the existence of the 1975–1980 policies. However, St. Paul claims that Americhem cannot prove the policies' terms, including limits of liability. Therefore, St. Paul argues that it has no duty to defend or to indemnify Americhem pursuant to the 1975–1980 policies.

## II.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Canderm*

presented by the instant motion. W.D.Mich.L.R. 29(d).

**2.** Americhem also alleges that it contracted with St. Paul for general liability insurance from May 1, 1980, to May 1, 1981, under policy number 651NA3629. Because Americhem has provided St. Paul with a copy of that contract, St. Paul does not contest its existence or terms.

*Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In ruling on a motion for summary judgment, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

## III.

■ Americhem has the burden of proving the existence and terms of the insurance policies. *Star Steel Supply Co. v. United States Fidelity and Guar. Co.,* 186 Mich.App. 475, 465 N.W.2d 17, 20 (1990); *United States Fidelity and Guar. Co. v. Thomas Solvent Co.,* 683 F.Supp. 1139, 1172 (W.D.Mich.1988). The policies have been lost or destroyed. However, a plaintiff may use circumstantial evidence to meet its burden. Fed.R.Evid. 1002, 1004; *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 810 F.Supp. 1420, 1426 (D.Del. 1992); *Servants of the Paraclete, Inc. v. Great American Ins. Co.,* 857 F.Supp. 822, 828 (D.N.M.1994); *see also Star Steel, supra; Thomas Solvent, supra.* In a lost policy case, the plaintiff must show a policy's existence and terms by a preponderance of the evidence. *Remington Arms,* 810 F.Supp. at 1423–26; *Servants of the Paraclete,* 857 F.Supp. at 828.[3]

■ The Federal Rules of Evidence provide as follows:

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, ex-

**3.** Federal courts are split regarding whether a plaintiff must prove the existence and terms of a lost policy by clear and convincing evidence or by a preponderance of the evidence. *See Remington Arms,* 810 F.Supp. at 1423–24 (discussing cases); *Servants of Paraclete,* 857 F.Supp. at 828 (noting split). The Court finds persuasive and concurs with the analysis in *Remington Arms, supra.* Defendant does not cite persuasive authority for any other standard.

cept as otherwise provided in these rules or by Act of Congress.

Fed.R.Evid. 1002.

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—

(1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.

Fed.R.Evid. 1004.

First, St. Paul does not dispute that the original policies are lost or have been destroyed and it does not contend that Americhem lost or destroyed the policies in bad faith. In addition, Americhem's president, L. Allen Jack, states through affidavit that the company's policy prior to 1980 was to discard insurance policies after the period of coverage expired and Americhem received a new policy. Americhem's insurance agent, William Bray, testified that his agency does not retain records for more than ten years. He further testified that when the insurance agency moved in 1989, it discarded insurance policies for 1979 and earlier.

Jack attests that Americhem conducted a diligent search, but it was unable to locate the policies. Therefore, under Federal Rule of Evidence 1004, Americhem may present secondary evidence of the policies' terms. *Remington Arms,* 810 F.Supp. at 1426 (party may show documents are lost or destroyed through evidence of a diligent but unsuccessful search for the documents); *Servants of Paraclete,* 857 F.Supp. at 828 (same).

St. Paul does not dispute the existence of the 1975–1980 policies. Americhem first offers the policies' declarations pages to show the policies' terms. The declarations pages, St. Paul forms, indicate the policy numbers, the dates of coverage, and the premiums paid.

The declarations pages state that the policies are "multicover" policies, but they do not state the insurance included. Bray testified that "multicover" policies include different lines of insurance. Bray does not recall what lines were included in the first two policies.[4]

Bray did not testify specifically whether he had any memory of the lines included in the third policy.[5] However, Bray testified that he has some recollection of the coverages starting with the fourth policy. He testified that his recollection of Americhem's account only extends as far back as the fourth policy. Bray recalls that the fourth and fifth policies[6] included general liability insurance.

Americhem further notes that the "multicover" policy effective May 1, 1980, whose existence and terms St. Paul does not dispute, includes general liability coverage. Americhem argues that this policy supports the conclusion that Americhem followed a pattern of purchasing general liability coverage from St. Paul.

In an affidavit which post-dates his deposition and defendant's motion, Bray states that his insurance agency has obtained insurance coverage, including general liability insurance, for Americhem since Americhem's inception. Bray further states that Americhem had comprehensive general liability coverage with St. Paul from 1975 through 1980.

The Sixth Circuit has held that "it is 'accepted precedent' that after a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting earlier deposition testimony." *Davidson & Jones Development Co. v. Elmore Development Co.,* 921 F.2d 1343, 1352 (6th Cir.1991). The Court finds that Bray was questioned at length about his memory of the 1975–1980 policies. Bray testified that his earliest memory of the Americhem account was regarding the fourth policy. In his affidavit, Bray does not offer any explanation for the inconsistency with his deposition testimony. Therefore, Americhem cannot use Bray's affidavit to create a question of fact as to the three earlier policies.

However, Bray's other deposition testimony creates an issue of fact. Bray testified that St. Paul "multicover" policies were

---

4. Effective 10/1/75–10/1/76 and 10/1/76–10/1/77.

5. Effective 10/1/77–10/1/78.

6. Effective 5/1/78–5/1/79 and 5/1/79–5/1/80.

package policies that included both property and general liability insurance. He further testified that a "multicover" package would never include only a property or a general liability policy. Through this testimony and Bray's memory of the fourth and fifth policies, Americhem has demonstrated a genuine issue of material fact regarding whether the 1975–1980 policies included general liability insurance.

The declarations pages do not state the policies' limits. The 1980–1981 policy, whose existence and terms St. Paul does not contest, had a $100,000.00 limit of liability, which Americhem increased to $1,000,000.00. Americhem contends that this supports the conclusion that the 1975–1980 policies had limits of liability no less than $100,000.00. Both Jack and Bray testified that they do not recall the limits of liability for the 1975–1980 policies. However, Bray further testified that $100,000.00 was a fairly standard limit in 1975 and that the standard limit would not have decreased over the next five or six years. In his affidavit Bray states that "[g]enerally the policy limits on the general liability insurance policies issued by St. Paul to Americhem Corporation would not have been less than $100,000 per year from 1975 through 1980." The Court finds that Americhem has demonstrated the existence of a genuine issue of material fact regarding the policies' limits.

Neither Bray nor Jack recall the policies' specific language. To show the terms, Americhem offers specimen copies of a declarations form and a coverage form, which it asserts were the state-approved comprehensive general liability forms which St. Paul used from 1975 through 1980. St. Paul stipulated that it only sells insurance policies in Michigan which are approved by the Michigan Insurance Commissioner. St. Paul admits that the specimen forms were approved for use in Michigan on or about July 1, 1974, and continued to be available for use through 1976 and thereafter. St. Paul does not contend that from 1975 through 1980 it used any other forms for comprehensive general liability insurance in Michigan.

St. Paul admits that the first St. Paul comprehensive general liability insurance policy which included a pollution exclusion clause, excluding coverage for damage not the result of a "sudden accident," was approved by the State of Michigan in 1980. Therefore, Americhem argues that St. Paul did not use this form until 1980. Americhem further argues that St. Paul did not include a total pollution exclusion in its comprehensive general liability policies until 1985.

The Court finds that Americhem has demonstrated the existence of a genuine issue of material fact regarding the policies' terms, including limits of liability. *See American States Ins. Co. v. Mankato Iron & Metal, Inc.*, 848 F.Supp. 1436, 1440–41 (D.Minn. 1993) (insured survived motion for summary judgment where it offered evidence of policy numbers, effective dates, fact issued by insurer, that policies were comprehensive general liability policies, and policies from previous four years to prove terms). Therefore, the issue is for the trier of fact to determine. Fed.R.Evid. 1008; *Remington*, 810 F.Supp. at 1422–23; *Servants of Paraclete*, 857 F.Supp. at 829.

### IV.

For the foregoing reasons, the Court will deny St. Paul's motion for partial summary judgment.