728 A.2d 225 (1998)
320 N.J. Super. 598
BOROUGH OF SAYREVILLE, a Municipal Corporation in the State of New Jersey, Plaintiff-Appellant,
v.
BELLEFONTE INSURANCE COMPANY, Cigna Property & Casualty Company, formerly known as Aetna Insurance Company and Insurance Company of North America, Defendants-Respondents, and
American Insurance Company, Interstate Fire and Casualty Company, Mead Reinsurance Corporation, Jersey Property-Liability Guaranty Association and Home Insurance Company, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1998.
Decided August 10, 1998.
Andrew Bayer, for plaintiff-appellant (Decotiis, Fitzpatrick & Gluck, attorneys; Mr. Bayer, Teaneck, and Jeffrey W. Coppola, on the brief).
Patricia B. Santelle, Philadelphia, PA, for defendants-respondents CIGNA Property & Casualty Company and Century Indemnity Company (successor to CCI Insurance Company, successor to Insurance Company of North America) (White and Williams, attorneys; Ms. Santelle and Roberta A. Golden, on the brief).
Ronald H. DeMaria, Newark, for defendant-respondent Bellefonte Insurance Company (DeMaria Ellis, attorneys; Mr. DeMaria and Daniel S. Braverman, on the brief).
Smith, Stratton, Wise, Heher & Brennan, Princeton, and Laura A. Foggan, Keith S. Watson, Meredith Fuchs (Wiley, Rein & Fielding) of the Washington, D.C. bar, admitted pro hac vice, for amicus curiae Insurance Environmental Litigation Association (Wendy Mager, Princeton, on the brief).
Before Judges KING, KESTIN and CUFF.
The opinion of the court was delivered by
*226 KING, P.J.A.D.

I
This case presents the issue of the quantum of the insured's burden of proof to establish the existence and contents of lost or missing liability insurance policies. We conclude that the insured's burden of proof is by the preponderance of the evidence, not clear and convincing proof.
Plaintiff, Borough of Sayreville, a municipality in Middlesex County, maintained various comprehensive general liability insurance policies, primary and excess, with numerous carriers, in the period during which it operated a municipal landfill in a marshland. The landfill, eventually filled to capacity, closed in 1977. Plaintiff claims the closure was pursuant to a plan approved by the New Jersey Department of Environmental Protection (DEP). No remediation of soil or groundwater was ordered at the time.
In 1981, utility excavation at the site led to discovery of an undetermined number of fifty-five-gallon drums containing hazardous chemicals illegally buried at the landfill while in operation. In proceedings unrelated to the issues on this appeal, a grand jury returned indictments against the generators or haulers of those chemical-laden drums, none of whom are parties here. In the DEP and United States Environmental Protection Agency (EPA) investigations which followed, however, plaintiff was directed to perform various remediation and monitoring tasks at the landfill. Some tests indicated that groundwater beneath the site had been polluted by the landfill and other evidence indicated the landfill operation may have polluted surrounding surface waters.
Plaintiff began this action for insurance coverage, eventually settling with all joined carriers except these defendants-respondents (CIGNA and Bellefonte) prior to summary judgments in these defendants' favor in the Law Division. The judge concluded generally that in operating the landfill plaintiff expected or intended to cause the pollution ultimately discovered, continued polluting after it knew of the damages caused to the environment, and was not entitled to coverage for any pollution to groundwater because the final regulatory approvals of plaintiff's environmental plan did not require groundwater remediation. The judge also denied coverage under several missing policies, finding plaintiff failed in its burden to produce those policies or establish the terms thereunder. We reverse.
In our view the evidence was disputed sufficiently to overcome summary judgment motions on the policy-exclusion issues. Moreover, even if there was an applicable exclusion barring coverage, plaintiff was entitled to the costs of monitoring groundwater even though no remediation may be necessary. On the facts presented, however, we cannot determine to what extent such monitoring costs resulted from an improper closure of the landfill as distinguished from the later discovery of the drums of chemicals and leachate from those hazardous materials. We also conclude that plaintiff must be allowed the opportunity to establish the terms and provisions of any missing CIGNA (then Aetna) policies by parol or other relevant evidence, which the Law Division judge did not consider.
[Only Point IX on the burden of proof with respect to lost or missing insurance policies merits publication. See R. 1:36-2(a) and (d). Therefore Points II to VIII are omitted from publication.]

IX
Finally, plaintiff contends the Law Division judge erred in finding that its failure to produce the so-called "missing" CIGNA 1970 to 1973 policies precluded it from seeking coverage thereunder. Plaintiff says the judge erred by requiring it to prove the existence of such policies by clear and convincing evidence. In addition, plaintiff says the judge disregarded the evidence that in fact such policies were issued. CIGNA replies that the judge properly placed the burden on plaintiff to produce the policies, the proper standard was one of clear and convincing evidence, and in this case plaintiff failed to meet that burden.
The judge concluded the party seeking coverage has the burden to establish the existence of the policies. He observed that *227 certain CIGNA policies had not been located by either side even though CIGNA had searched its records. Moreover, he questioned how he could determine coverage and liability questions without evidence of the parties' contracts. With respect to the burden of proof, the judge said that
the obligation is on the party who seeks coverage to establish certainly by the preponderance of the evidence, if not clear and convincing evidence, but by the preponderance of the evidence that a policy exists, and that the terms of the policy may be discerned by the court in order to enforce its terms.
The judge concluded that CIGNA was entitled to judgment on the claims on all missing policies.
With respect to proof of the terms of the missing policies, the burden was upon plaintiff, as insured, initially to bring its claim within the coverage of the policy. Diamond Shamrock Chemicals Co. v. Aetna Casualty & Surety Co., 258 N.J.Super. 167, 216, 609 A.2d 440 (App.Div.1992), certif. denied, 134 N.J. 481, 634 A.2d 528 (1993). "It was, of course, incumbent upon the plaintiff to show damages for which it was entitled to recover under the terms of its policy of insurance." Tauriello v. Aetna Ins. Co., 14 N.J.Super. 530, 532, 82 A.2d 226 (Law Div. 1951), quoting United Bond & Mortgage Co. v. Concordia Fire Ins. Co. 113 N.J.L. 28, 29, 172 A. 373 (E. & A.1934).
In the course of establishing coverage, the insured typically introduces the policy into evidence: "The plaintiff suing on a policy of casualty insurance must establish that defendant was carrying the insurance risk in question, and should introduce the policy into evidence." 21 Appleman on Insurance § 12094 (1980) p. 22. In the case where
[a] policy is lost or mislaid, it is proper to introduce another policy coupled with evidence that it is the same in form as the policy sued on. However, courts have been reluctant to accept such proof where it fails to qualify as "best evidence."
[Id. at § 12354, p. 470-71 (footnotes omitted).]
And see 44 Am.Jur.2d Insurance § 1924 (1982) ("If the insurer properly raises the issue, the burden is upon the plaintiff, in an action upon an insurance policy, of proving the execution, delivery or consummation of the insurance contract").
With respect to whether proof of the terms of missing policies must be by a preponderance of the evidence, as plaintiff maintains, or by clear and convincing evidence, as CIGNA asserts, the courts are divided. No New Jersey court has considered this issue in a published decision. Among the stated reasons for the higher standard is the fact that the policy itself was central to the parties' obligations. See Zuckermandel v. Zuckermandel, 135 N.J.Eq. 598, 599, 39 A.2d 497 (Ch.1944) (concerning a lost business contract, a bill of sale, where the court referred approvingly to other courts which, in establishing missing "instruments" by parol proofs, had applied standards of proof described as "clear," "cogent," "reasonably certain" and "convincing").
Published opinions from other jurisdictions also have applied the clear and convincing standard to missing policies. E.g. Boyce Thompson Inst. for Plant Research, Inc. v. Insurance Co. of N.Am., 751 F.Supp. 1137, 1140 (S.D.N.Y.1990); and Emons Industries, Inc. v. Liberty Mut. Fire Ins. Co., 545 F.Supp. 185, 188 (S.D.N.Y.1982). And see Keene Corp. v. Insurance Co. of N. Am., 513 F.Supp. 47, 48 n. 1 (D.D.C.) (where the court dismissed the complaint against an insurer because the only evidence of coverage was "index cards of policy numbers"), rev'd on other grounds, 667 F.2d 1034 (D.C.Cir.1981), cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).
Remington Arms Co. v. Liberty Mut. Ins. Co. 810 F.Supp. 1420 (D.Del.1992), reached the opposite conclusion. The court there reviewed various reported decisions applying a clear and convincing standard to missing policy terms, and concluded that those decisions were not well reasoned. Id. at 1423-26. The court observed that the usual standard in civil matters was the preponderance standard and found the typical insurance dispute was unlike those civil cases where the exceptional standard of clear and convincing *228 evidence was applied: mostly instances of alleged fraud and undue influence, involving the existence and terms of a will or deed; reformation of an instrument because of mutual mistake; creation of a constructive or parol trust; an oral contract for specific performance; or impeachment of a notary's acknowledgement. Id. at 1425. The Delaware federal district court concluded that in the case of establishing policy terms, the evidence is "usually comprised of business records and standard forms made by and found in the possession of the party against whom they were being offered." Id. at 1426. The jury also noted how the Federal Rules of Evidence had tacitly acknowledged the trustworthiness of such documents by creating an exception from the general hearsay rules for them. Ibid. Thus, especially where fraud was not alleged, the court deemed it more practical and fair to apply the preponderance standard. Ibid.
Following Remington Arms, a number of courts have adopted its reasoning or cited it approvingly in applying a preponderance standard to missing policies. Americhem Corp. v. St. Paul Fire & Marine Ins. Co., 942 F.Supp. 1143, 1144 (W.D.Mich.1995); Servants of Paraclete v. Great Am. Ins. Co., 866 F.Supp. 1560, 1571-72 (D.N.M.1994); and American States Ins. v. Mankato Iron & Metal, 848 F.Supp. 1436, 1441 (D.Minn.1993). And see J.T. Baker v. Aetna Cas. & Sur. Co., 1996 WL 451316 (D.N.J. August 5, 1996) (where the District Court for New Jersey noted that it "concur[red] with the Remington Arms assessment that the preponderance of evidence standard of proof should apply in the commercial insurance environmental context because the rationale of preventing fraud is absent").
The issue here arises in the context of an appeal from a summary judgment but the standard articulated in Brill nonetheless makes plaintiff's burden of proof at trial relevant for determination of the issue. Our reading of the transcript of the judge's decision on this question leads us to conclude that it is unclear whether the judge in fact applied the preponderance or the clear and convincing standard. He referred to them both and, in our view, seemingly implied that plaintiff's proofs were inadequate under either standard.
In the absence of any claim of fraud, we adopt a preponderance standard. And see 21 Appleman, § 12094 at 28 ("A plaintiff need prove his case only by a preponderance of the evidence"); cf. 21A Appleman, supra, § 12423 at 215 ("To establish an oral contract of insurance, the proof must be clear and convincing") (citing Marano v. Sabbio, 26 N.J.Super. 201, 97 A.2d 732 (App.Div.1953)). In this case the question is not whether there was an oral contract but rather the nature of plaintiff's burden to prove by parol evidence the existence of a written contract.
In the present matter the missing policies were CIGNA (then Aetna) primary policies from 1970 to about 1974. It is not disputed that CIGNA issued plaintiff CGL primary policies from 1975 to 1977. The terms of the latter policies are not disputed, only their meaning. Interestingly enough, in ruling against plaintiff on this issue it appears that the judge so ruled not so much because he doubted the policies existed, but because he did not know their terms. However, nothing in the present record suggests that in the 1970 to 1974 years CIGNA was using a different form for its CGL policies than used between 1975 and 1977.
As plaintiff points out, copies of schedules of "underlying insurance" for 1970 to 1971, 1971 to 1972, 1972 to 1973, and 1973 to 1974 apparently list Aetna (now CIGNA) policies by number, type, applicable limits, and dates of coverage. Additional evidence, though admittedly incomplete, of minutes from Borough meetings indicates that in fact Aetna CGL policies were in effect at the time. Based on this, we conclude that sufficient evidence exists to suggest a chance that plaintiff's burden by a preponderance as to existence of the policies can be shouldered. Upon remand the parties may desire to pursue the extent to which the terms of Aetna's standard CGL policies between 1970 and 1974 may have differed from those in effect between 1975 and 1977. See Delaware v. National Auto. Ins. Co., 290 A.2d 675, 677 (Del.Ch.1972) (where, in the face of the missing auto insurance policies, the court considered "the specimen copy of insurance issued *229 by the [carrier] ... at the time of the accident as the next best evidence"); and Fraser v. Metropolitan Life Ins., 165 Wash. 667, 5 P.2d 978, 979 (1931) ("Upon the trial, evidence was introduced to the effect that the policy had been lost or mislaid and could not be found, and a form of the policy was offered and received in evidence, which, the testimony showed, was the same form of policy as had been issued to [the insured]."). We remand on this issue for further prompt discovery, consistent with plaintiff's burden of proof by a preponderance of the evidence as to the "missing policies."
The summary judgment order in favor of defendants is reversed.