178 P.2d 578

## HARDEN et al. v. ST. PAUL FIRE & MARINE INS. CO.

No. 4973.

Supreme Court of New Mexico.

March 20, 1947.

W. A. Keleher, Theo. E. Jones and E. L. Swope, all of Albuquerque, and Filo Sedillo, of Belen, for appellant.

Iden & Johnson of Albuquerque, for appellees.

McGHEE, Justice.

This is an appeal from a judgment for the loss by fire of a carload of nails claimed to have been covered by an oral contract of insurance. We will refer to the parties as they appeared in the trial court.

The plaintiffs are engaged in growing, marketing and shipping vegetables and other crops from the Bluewater-Toltec Irrigation District near Grants, New Mexico, and as a part of the business own and operate a parking shed and a shook or box factory where lumber is processed for making crates and containers, and where crates are assembled for holding vegetables, fruits, etc. In originating and developing the business they purchased some property from the Geo. E. Breece Lumber Company near Grants on which were located many buildings that were to be repaired and remodeled for use in their business, including materials for making packing crates. They desired complete insurance on their buildings, machinery and supplies, as well as all of their operations, and tendered such business to Mr. Cy Rouse, the sole local insurance agent, newspaper publisher, editor, and as one of plaintiffs' witnesses appraised him, "the general man about town." Not only was he the sole insurance agent of Grants but the defendant was his only insurance company. As he was new in the business, he felt he should not act without advice from the state agent of the defendant, P. H. Ware.

The plaintiff Church, Rouse and Ware met in Grants and inspection was made of the scattered buildings, machinery, and some supplies. Church informed them of the desire of plaintiffs to have comprehensive coverage on all of their property and operations, but was advised the defendant did not issue such policies, but it would be glad to have their fire insurance business. Valuations on certain of the buildings and machinery were agreed upon, and it was agreed by Rouse and Ware that the insurance was immediately effective, with the policy to be later issued. It is agreed that as other buildings were completed "riders" would be issued covering them and their contents and attached to the master policy.

The only loss by fire was the carload of nails. The defendant pleaded the complaint did not state a cause of action, denied

the allegations of the complaint, claimed its agents acted without authority, urged the matters set out in the complaint were within the Statute of Frauds, and in any event, it was only liable for three-fourths of the value of the nails.

In this court it has abandoned all defenses except that the evidence is insufficient to establish a valid oral contract of insurance on the nails, and that if liable then it cannot be held for more than three-fourths value instead of the full value as allowed by the jury.

The parties agree that the necessary elements to effectuate an oral contract of insurance are: (1) the subject-matter; (2) the risk insured against; (3) the duration of the risk; (4) the amount of insurance; (5) the rate of premium paid or agreed to be paid; and (6) the identity of the parties.

The trial judge correctly instructed the jury that each of these matters had to be established by a preponderance of the evidence in order for the plaintiff to recover. The record shows Church told Rouse and Ware that he was going to establish the shook or box factory, that he would be getting machinery, material and supplies from all over the country, wherever it could be found, and that shipments would be coming in from time to time over the Santa Fe Railway lines and that it would be temporarily stored in whatever buildings were available, and that he want-

ed it completely covered by insurance on arrival and that his representatives would give the values on inquiry; and that Rouse in the presence of Ware fully agreed to this arrangement and promised that he would keep in touch with the local agent of the railway and immediately on arrival each shipment would be covered by insurance for full value, and when permanently stored a rider would be issued to be attached to the master policy. It was further agreed when repairs and construction were finished a new policy on the buildings and their contents would issue in place of the temporary policy. He is fully corroborated by Rouse except Rouse said he thought the supplies or materials for the manufacture of crates would be insured for only three-fourths value.

The testimony of Ware corroborates that of Church and Rouse in part. Rouse says he overlooked, or did not know of the arrival of the carload of nails by rail, which was temporarily stored in a building on which a written rider had not been issued on its contents.

The defendant strongly urges upon us that nails could not have been within the contemplation of the parties even if the other necessary elements were established.

To this we point to the evidence that they were going to make wooden crates in which to pack and ship fruits and vegetables. It has been a long time since the

basket makers left New Mexico, and we dare say nails have been the medium of holding wooden crates together in this state for sufficient time for such usage to become a matter of general knowledge and were included as materials or supplies. The writer used them in an adjoining state for that identical purpose 40 years ago.

The rate or premium to be paid did not appear to raise a serious question in the minds of the agents of the company who were witnesses. On cross-examination by the defendant's attorney, Rouse testified:

"Q. Was anything said about the premium? A. No. He (referring to Church) indicated they were willing to pay any premium charged."

Ware was called as a witness by the defendant and after saying he considered certain of the property insured, testified as follows on direct examination:

"Q. Did you discuss what amount the premium would be? A. We did not compute the premium or discuss that because we discussed the amount of insurance and the rate of insurance would be computed on that.

"Q. You didn't know at that time what the premium amounted to in dollars and cents, did you? A. Not actual dollars and cents, didn't have my rate book.

"Q. And you know that Mr. Church didn't know either, don't you? A. Well, he did know approximately because the rate is the same as other contents he was carrying insurance upon."

Incidentally, the record shows the defendant collected some $2,250 or $2,500 in premiums on the policy and riders actually issued following these conversations. —quite a nice line of business for a small town like Grants and an agent just starting in the insurance business, and it is small wonder Rouse was willing to assume the burden of keeping in touch with the railroad agent and was willing to give coverage immediately on delivery by the railway company.

█ A careful examination of the entire record satisfies us the evidence is sufficient to sustain the verdict.

The judgment will be affirmed, and it is so ordered.

BRICE, C. J., and SADLER and LUJAN, JJ., concur.