486 P.2d 625

Reynalda BACA, Individually; Reynalda Baca, Administrator of the Estate of Arturo Baca, Deceased et al., Plaintiffs-Appellants,

v.

The NEW MEXICO STATE HIGHWAY DEPARTMENT et al., Defendants-Appellees.

Camilo BACA, Administrator of the Estate of Isabel de la fe Baca, Deceased, Plaintiff-Appellant,

v.

The NEW MEXICO STATE HIGHWAY DEPARTMENT et al., Defendants-Appellees.

No. 597.

Court of Appeals of New Mexico.

June 11, 1971.

W. R. Kegel, Santa Fe, Arturo G. Ortega, Albuquerque, for plaintiffs-appellants.

Allen C. Dewey, Jr., Leland S. Sedberry, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for Mountain States Mutual Casualty Co.

David L. Norvell, Atty. Gen., Richard T. Whitley, James V. Noble, Richard L. Russell, Sp. Asst. Attys. Gen., Santa Fe, for defendants-appellees.

## OPINION

SPIESS, Chief Judge.

Actions involving deaths and personal injuries resulting from the collision of motor vehicles were brought against a number of defendants, including New Mexico Highway Department (Department). The claims against the Department related to an alleged dangerous condition of a particular highway which was permitted to exist following construction, either partial or complete. The Department is immune from suit in the absence of liability insurance coverage (§ 5–6–19 and § 5–6–20, N. M.S.A.1953 (Repl. Vol. 2).

Department's insurer, Mountain States Mutual Casualty Company (Company), and plaintiffs were in disagreement as to whether coverage with respect to the particular accident was afforded by the liability policy issued to the Department by the Company. This issue was presented to the trial court through joinder with the complaint against the Department and other defendants of a count for declaratory judgment against the insurance company. Upon motions of the insurance company and the department, the trial court entered summary judgment holding:

"* * * that the liability insurance policy issued by the Defendant, Mountain States Mutual Casualty Company, to the Defendant, New Mexico State Highway Department, is unambiguous and does not afford coverage to the New Mexico Highway Department for the claims of the Plaintiffs, * * *"

Upon so holding, the trial court dismissed the count for declaratory judgment as against the Company, and dismissed the complaint against the Department. This appeal followed. We reverse the summary judgment.

Facts before the trial court upon its consideration of the motion for summary judgment are the following: During the month of March, 1967, the Department entered into a contract for the construction of a portion of a north-south highway in the county of Mora. The highway being constructed consisted of 8.268 miles and formed a portion of a four-lane highway known as Interstate 25. The portion of the highway involved is herein designated as I–25. The new construction runs a short distance west of and parallel to old U. S. Highway 85 (85). During the course of construction of I–25 it became necessary to divert traffic from a portion of the new construction to 85.

The east lane of I–25 was intended, after completion of the entire project, to accommodate only northbound traffic. During the course of construction, this east lane, as it was completed, had been put to use for both north and southbound traffic. At a point where the completed east lane of

I-25 reached an area of the lane which had not been completed, traffic was diverted to 85 by means of a temporarily constructed bypass from I-25 to 85.

For a distance along the east lane of I-25 and along 85, the highways, including the bypass linking I-25 with 85, were marked with a white center line. Yellow lines were painted on each side of the white center line. These markings directed traffic going south on I-25 to the west portion of the by-pass, and thence to the west portion of 85.

Traffic going north on 85 was directed by these markings to follow a course to and upon the easterly half of the bypass, thence to the easterly half of I-25. When the northbound lane of I-25 was completed, traffic going both north and south was turned onto it. On November 29, 1967, the contractor, at the direction of an employee of the Department, undertook to eradicate the white and yellow lines which had been painted upon I-25, the bypass and 85. In so doing, the contractor painted over the lines with a black paint, and likewise painted a white line along the center of I-25, which, as stated, was then used for both northbound and southbound traffic. The obliterating, or erasing of the particular lines upon abandonment of the bypass, while a function of the contractor, was under the direction and supervison of employees of the Department. On January 18, 1968, the lines directing traffic over the bypass to 85 had reappeared and employees of the Department at this time painted over the lines with a black paint.

It is disclosed by the record that when the accident occurred February 4, 1968, the black paint affixed by employees of the Department had started to wear off and the lines again became visible.

On the date mentioned, February 4, 1968, the plaintiffs' intestates and plaintiffs were proceeding south, and, because of the confusing and perplexing situation caused by the marks or lines turning left onto the bypass, plaintiff's, Reynalda Baca's intestate (her husband and driver) drove the station wagon in which they were riding to the left along the white and yellow lines and, apparently noticing that the bypass was closed, attempted to turn back into the west lane of the northbound lanes of I-25 and collided with an oncoming vehicle. The collision occurred upon the bypass. Three deaths and serious injuries to the survivors resulted.

With respect to the granting of summary judgment, the sole issue was whether the liability policy issued by the Company to the Department afforded coverage for the accident involved.

In considering the question of policy coverage, we are mindful of the rule that the measure of the rights of the parties is to be found in their intention as expressed by them in the contract. Further, if unambiguous, the interpretation of the contract is one of law to be made by the court. Vargas v. Pacific National Life Assurance Co., 79 N.M. 152, 441 P.2d 50 (1968).

In ascribing error on the part of the trial court in interpreting the policy so as to exclude coverage of the particular accident, plaintiffs have referred to certain general language indicative of a broad coverage, but, reliance is specifically placed upon the following typed indorsement.

"I. Comprehensive General Liability Insuranc Coverage Part

A. * * *

B. EXCLUSION OF HIGHWAYS

It is agreed that the policy does not and shall not be construed to cover any liability arising solely from the existence of or condition of highways, streets, roads or other dedicated ways, including bridges, culverts and similar structures appurtenant thereto.

This exclusion does not apply to accidents arising out of construction, maintenance or repair operations undertaken by or on behalf of the named insured."

C.  *   *   *

The parties are in agreement that the policy with respect to the particular coverage which is the subject of this appeal is unambiguous. With this conclusion we are in agreement. There is little doubt, in our opinion, as to the meaning of the language contained in the quoted endorsement.

Excluded from coverage under the first paragraph of B is "* * * liability arising solely from the existence of or condition of highways, * * *." The accident involved, at least for the purpose of summary judgment, arose from the condition of the highway, namely, the lines which confused and misdirected the driver of the car in which plaintiffs were riding. This exclusion, however, is inapplicable under the second paragraph of B, "* * * to accidents arising out of construction, maintenance or repair operations * * *." The words "arising out of" are very broad, general and comprehensive terms, ordinarily understood to mean "originating from," "having its origin in," "growing out of" or "flowing from." See Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W. 2d 181, 154 A.L.R. 1088 (1944); Carter v. Bergeron, 102 N.H. 464, 160 A.2d 348, 89 A.L.R.2d 142 (1960). Also cases cited in the Anno. 89 A.L.R.2d 150 (1963). Compare Berry v. J. C. Penney Co., 74 N.M. 484, 394 P.2d 996 (1964); Martinez v. Fidel, 61 N.M. 6, 293 P.2d 654 (1956); Merrill v. Penasco Lumber Co., 27 N.M. 632, 204 P. 72 (1922).

In this case, building the bypass from I–25 to 85 and painting the lines upon I–25, the bypass and 85 for the purpose of directing traffic from the uncompleted portion of I–25 was clearly a part of construction. Eradicating or erasing the lines after traffic was to flow only upon I–25 was likewise a part of the construction process.

The accident was caused by the presence of the painted lines upon I–25, the bypass and 85. In our opinion, it arose out of a construction operation which resulted in coverage under the language of the second paragraph of the endorsement B, which we interpret as extending coverage to the accident involved here.

The Company contends that the language "arising out of construction, maintenance, or repair operations" should be interpreted as providing coverage for a condition of the highways only while actual construction, maintenance, or repair operations are in progress. It argues that to decline to so interpret the second paragraph of the endorsement would nullify or destroy the effect of the first paragraph. It reasons that anything which is a "condition of highways" must necessarily arise from one of the three activities, namely, construction, maintenance or repair. We disagree. "Condition of highways," as used in the first paragraph of the endorsement, could arise in a number of ways other than from construction, maintenance or repair operations. A few of such ways would include normal deterioration of the highways, condition of the highway due to floods, or other weather conditions, and unauthorized or improper use of the highways.

In our opinion, the interpretation we have placed on the second paragraph of endorsement B does not have the effect of nullifying the first paragraph of B.

Additionally, the Company, to sustain its position, calls our attention to the following policy exclusion:

"D. EXCLUSION — COMPLETED OPERATIONS AND PRODUCTS HAZARD

'It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the "Completed Operations Hazard" or the "Products Hazard".'

* * * "

*   *   *   *   *   *

" 'completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation

or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith."

We do not consider this exclusion to be applicable under the facts in this case because, as has been shown, the accident occurred upon premises owned by the insured (Department).

■ The Company finally contends that plaintiffs have no cause of action against it at this time. It says that if the other contentions urged are not sustained, summary judgment is nevertheless sustainable on the ground that no actual controversy exists as between it and plaintiffs. Consequently, there is no basis for declaratory relief. (§ 22–6–1, N.M.S.A.1953.) As has been pointed out, no action is maintainable against the Department in the absence of liability insurance coverage extending to the particular accident. The Company's position, as stated, is that the policy does not extend coverage to the accident involved.

In our view, an actual controversy does exist as between plaintiffs and the Company with respect to coverage, absent which the suit against the Department is not maintainable. The Company, in citing Rhodes v. Lucero, 79 N.M. 403, 444 P.2d 588 (1968), argues that because plaintiffs have no judgment against the Department and the rights against the Department are contingent, no justiciable controversy is shown. *Rhodes* did not, as here, involve a situation where insurance coverage was a condition precedent to the maintenance of an action as against one of the alleged tort-feasors. We hold the action for declaratory judgment is maintainable in this situation although no judgment has been obtained against the Department. Compare Baca v. Board of County Commissioners, 76 N.M. 88, 412 P.2d 389 (1966).

■ It is further contended by the Company that the policy provisions prevent suit against it in the absence of a determination of liability on the part of the assured. In our opinion, these provisions are inapplicable to an action of the kind involved here, which, as stated, seeks only an interpretation of the contract between the parties. Compare Satterwhite v. Stolz, 79 N.M. 320, 442 P.2d 810 (Ct.App.1968).

■ The Company appears further to argue, as a basis for sustaining the summary judgment, that joining it as a party defendant, and likewise joining the declaratory judgment action against it with the claim against the Department was improper.

Summary judgment under the provisions of Rule 56(c) (§ 21–1–1(56) (c), N.M.S.A. 1953 Repl.Vol. 4), is only proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Hewitt-Robins, Inc., etc. v. Lea County Sand & Gravel, Inc., 70 N.M. 144, 371 P.2d 795 (1962); Dempsey v. Alamo Hotels, Inc., 76 N.M. 712, 418 P.2d 58 (1966).

From the above authorities, and those therein referred to, it is clear that the impropriety, if such be the case, of the joinder of the Company as a party defendant, and likewise joinder of the cause of action for declaratory judgment with the complaint against the Department cannot be utilized as a basis for supporting the summary judgment.

Plaintiffs, by their reply brief, have undertaken to challenge the doctrine of sovereign immunity. The Department has likewise responded to this issue. In view of the conclusions we have reached we do not consider, nor do we rule upon this challenge.

The order granting summary judgment should be set aside with directions to proceed in a manner not inconsistent herewith.

It is so ordered.

WOOD and SUTIN, JJ., concur.