The SERVANTS OF the PARACLETE, INC., a New Mexico non-profit corporation, Plaintiff,

v.

GREAT AMERICAN INSURANCE COMPANY, St. Paul Fire and Marine Insurance Company, Catholic Mutual Relief Society of America, John Does I–XVI and John Does I–IV, Defendants.

Civ. No. 93–0236 JB.

United States District Court, D. New Mexico.

June 14, 1994.

Floyd Wilson, Wilson & Pryor, Albuquerque, NM, for plaintiff.

Robert Mroz, Madison, Harbour, Mroz & Puglisi, Albuquerque, NM and Jeffrey J. Bouslog, Oppenheimer, Wolff & Donnelly, St. Paul, MN, for defendant St. Paul.

David Spector, Mayer, Brown & Platt, Chicago, IL and Victor Ortega, Montgomery & Andrews, Santa Fe, NM, for defendant Catholic Mut.

Michael W. Brennan, Stephan J. Lauer, and Grey W. Handy, Carpenter, Comeau, Maldegen, Brennan, Nixon & Templeman, Santa Fe, NM, for defendant Great American.

Mark Wendorf, Reinhardt & Anderson, St. Paul, MN and Bruce Pasternack, Albuquerque, NM, for defendant John Does.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, Chief Judge.

THIS MATTER is before the Court on Defendant St. Paul Fire and Marine Insurance Company's ("St. Paul") December 23, 1993, motion for summary judgment, Defendant Catholic Mutual Relief Society of America's ("Catholic Mutual") January 31, 1994, motion for summary judgment on Count III, Defendant Great American Insurance Company's ("Great American") March 24, 1994 motion for summary judgment, Plaintiff's April 11, 1994, cross-motion for partial summary judgment against Great American, and Defendants John Does' April 11, 1994, cross-motion for partial summary judgment against Great American. On May 12, 1993, the Court held oral argument on these motions as well as Catholic Mutual's January 14, 1994, motion for realignment of parties and Catholic Mutual's February 24, 1994, motion for leave to file third party complaint against Royal Insurance Company of America. At the conclusion of oral argument, the Court denied Catholic Mutual's motion for realignment of parties, granted Catholic Mutual's motion for leave to file third-party complaint and took the remaining motions under advisement. This memorandum opinion and order constitutes the Court's decision as to the respective motions for summary judgment.

### BACKGROUND

This is a declaratory judgment action. Plaintiff alleges the defendant insurance companies breached their respective contracts to defend and indemnify Plaintiff in numerous lawsuits seeking damages against Plaintiff for alleged sexual abuse committed by former priest James R. Porter ("Porter"). Porter was a priest with the Diocese of Fall River in Massachusetts. In 1967, he was sent to the Servants' facilities in Jemez Springs, New Mexico for treatment of pedophilia. During the course of his treatment, Porter was assigned to work as a "supply priest" in 1968 in various parishes throughout New Mexico and was similarly assigned to a church in Bemidji, Minnesota in August, 1969. At these locations, Porter allegedly sexually abused numerous parish children.

In 1992, the Servants was sued in state court actions brought by the children in Minnesota and New Mexico. John Doe I–XVI Defendants are the plaintiffs in the Minnesota actions and John Doe I–IV Defendants are the claimants in New Mexico. Plaintiff made a demand on each of the Defendants for defense and indemnification, but with the exception of Great American, which agreed to provide a defense only in the New Mexico litigation, Defendants rejected Plaintiff's demands. In November 1993, Plaintiff settled both the Minnesota and New Mexico actions and as part of the settlement, assigned to the John Does its claims against Defendants.

■ A motion for summary judgment may be granted only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), and as a matter of law, must show entitlement to summary disposition beyond a reasonable doubt. *Florom v. Elliott Mfg. Co.*, 867 F.2d 570, 574 (10th Cir.1989). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The Court must view the record in a light most favorable to the existence of triable issues. *Deepwater Investments Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991).

## ST. PAUL'S MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges St. Paul provided it general liability insurance coverage during some portion of the years 1969–1970 but Plaintiff is unable to locate its copy of the policy. First Amended Complaint at para. 5. St. Paul also no longer has a copy as it retains commercial liability policies for a period of three years. Plaintiff's Memorandum in Opposition to St. Paul's Motion for Summary Judgment, Ex. G.

The dates of the alleged abuse in the underlying tort actions are critical. The New Mexico claimants allege abuse by Porter in the spring and summer of 1968. The Minnesota claimants allege abuse from August 1969 through September 1970. All claimants contend it was not until 1992 that they realized the nature of their injuries. Therefore, it is undisputed that St. Paul did not insure Plaintiff during the period the New Mexico claimants were allegedly abused, whereas, if a policy existed, there was some overlap between the period of coverage and the alleged abuse of the Minnesota claimants.

St. Paul seeks an order of summary judgment that it had no duty to defend Servants in any of the underlying actions, or alternatively, an order for partial summary judgment that it had no duty to defend in the New Mexico actions.

## A. Evidentiary Burden of Proof in "Lost Policy" Cases

■ A prerequisite to considering whether St. Paul has a duty to defend and indemnify is that there be proof of the existence and material terms of the insurance policy. Under New Mexico law, the insured bears the burden of establishing the existence and terms of the policy. *Harden v. St. Paul Fire & Marine Ins. Co.*, 51 N.M. 55, 57, 178 P.2d 578, 579 (1947). The parties dispute whether Plaintiff must meet its burden by a "preponderance of the evidence" or "clear and convincing evidence."

■ The initial question is whether state or federal law controls in deciding which standard governs. St. Paul argues state law controls; Plaintiff contends federal law controls. The Court finds that under the analysis of *Erie R.R. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the issue is a procedural matter controlled by the Federal Rules of Evidence. *Remington Arms. Co. v. Liberty Mutual Ins. Co.*, 810 F.Supp. 1420, 1424 (D.Del.1992). Decisions cited by St. Paul applied state law to determine *which party* bore the burden of proving the existence and terms of a lost insurance policy,

not to determine by what evidentiary standard the policy must be proved. *See e.g., Bituminous Cas. Corp. v. Vacuum Tanks, Inc.,* 975 F.2d 1130, 1132 (5th Cir.1992) (applying Texas law to decide insured must prove terms of coverage); *Abex Corp. v. Maryland Cas. Co.,* 790 F.2d 119, 129 (D.C.Cir.1986) (under New York law, burden on insured to prove coverage existed; *UNR Indus., Inc. v. Continental Ins. Co.,* 682 F.Supp. 1434, 1447 (N.D.Ill.1988) (under Illinois law, insured must prove terms of policy, including exclusions); *U.S. Fidelity & Guaranty Co. v. Thomas Solvent Co.,* 683 F.Supp. 1139, 1172 (W.D.Mich.1988) (Michigan law governs in deciding insured must prove terms of coverage).

Federal courts are split on whether to apply a preponderance of the evidence or clear and convincing standard in lost policy cases. St. Paul relies on *Boyce Thompson Inst. for Plant Research, Inc. v. Insurance Co. of N. America,* 751 F.Supp. 1137 (S.D.N.Y.1990) which adopted the clear and convincing standard. *Boyce* reasoned a heightened standard was needed because lost insurance instruments are a "common problem." *Id.* at 1140. Even if this assertion is correct, this Court does not find it justifies a higher standard of proof than the traditional preponderance of the evidence test in civil cases. The Court concurs with the analysis in *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 810 F.Supp. 1420 (D.Del.1992). A heightened standard of proof is required in the civil context where fraud is a concern, such as proving the existence and contents of a lost will or oral contract. *Id.* at 1425 (citing Wigmore, *Evidence* § 2498). Missing insurance policies are not similarly as vulnerable to fraud because the business records and standard forms used to prove the existence and contents of the policies are inherently more reliable than the majority of papers offered into evidence. *Id.* at 1425–26. The Court notes that the chain of cases relied upon in *Boyce* in support of the clear and convincing standard adopted it without any analysis. *See Emons Indus. Inc. v. Liberty Mut. Fire Ins. Co.,* 545 F.Supp. 185 (S.D.N.Y.1982); *Keene Corp. v. Ins. Co. of N. America,* 513 F.Supp. 47 (D.D.C.1981).

St. Paul also relies on *Crawford v. 733 San Mateo Co.,* 854 F.2d 1220 (10th Cir.1988), where the Tenth Circuit interpreted a provision of the New Mexico Uniform Commercial Code to require proof of a lost instrument by clear and convincing evidence. *Id.* at 1221. The provision at issue, N.M.Stat.Ann. § 55–3–804 (repealed eff. July 1, 1992) was intended to protect an obligor from potential double liability where a negotiable instrument is lost or stolen. A lost insurance policy does not raise the same concerns. Therefore, the Court concludes that Plaintiff must prove the existence and terms of the alleged St. Paul policy by a preponderance of the evidence.

## B. Plaintiff's Proof of Coverage

■ Plaintiff must rely on secondary evidence to establish the existence and contents of the St. Paul policy, but in order to be permitted to introduce such evidence, Plaintiff must make a threshold showing of (1) the loss or destruction of the original policy and (2) the absence of bad faith. Fed.R.Evid. 1004; *Remington Arms* 810 F.Supp. at 1426. Loss or destruction of the original is most commonly shown through circumstantial evidence of a "diligent but unsuccessful search and inquiry for the missing document." *Burroughs Wellcome Co. v. Commercial Union Ins. Co.,* 632 F.Supp. 1213, 1223 (S.D.N.Y.1986). Plaintiff offers the affidavit of Linda Soroos, administrator of the Servants, who attests to the efforts made to locate the original policy. The Court finds the "due diligence" requirement has been met.

■ To show the existence of a policy, Plaintiff offers a letter from St. Paul dated January 3, 1992, acknowledging it issued Plaintiff a policy designated No. 589JA1915. A business analyst with St. Paul's claims department attests that Policy No. 589JA1915 was an Owner's, Landlord's and Tenant's (OL & T) liability policy. Affidavit of Dianne Garrity. The policy limit appeared to be $100,000. Deposition testimony from a St. Paul underwriter revealed that from the late 1960's through the early 1970's, St. Paul used three general liability coverage forms, one of which was an OL & T policy, form No.

161090. These coverage forms were each issued with policy form jacket No. 16100.

Plaintiff also offers an entry from the business records of the Blair White Insurance Agency, who handled Plaintiff's insurance needs from the 1950's through the late 1970's. Blair White records show St. Paul Policy No. 589JA1915 was a three year policy with a premium of $554.00.

■ In addition to establishing the existence of a policy, Plaintiff also bears the burden of showing the policy's terms. *Harden v. St. Paul Fire & Marine Ins. Co.*, 51 N.M. 55, 57, 178 P.2d 578, 579 (1947). To meet its burden, Plaintiff offers specimen policies from St. Paul's records including OL & T form No. 161090 and policy form jacket No. 16100. In their pleadings, the parties disputed whether the alleged policy was an OL & T policy, or a broader Comprehensive General Liability coverage. At oral argument, however, the Defendants John Does conceded that St. Paul Policy No. 589JA1915 was an OL & T policy. The specimen OL & T policy states:

> The Company will pay on behalf of the insured all sums which the insured shall become liable to pay as damages because of:
>
> Coverage A, bodily injury or
>
> Coverage B, property damage
>
> to which the insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damages ...

St. Paul does not dispute the existence of the above evidence, but alleges it is insufficient as a matter of law to show that a policy in fact existed and the terms of the policy. The Court disagrees. In order for the Court to grant St. Paul's motion for summary judgment that it had no duty to defend, the Court would have to find that as a matter of law no reasonable fact finder could conclude that a policy existed or what the terms provided. Federal Rule of Evidence 1008 provides that

when a question is raised as to whether a writing ever existed, or whether the evidence of the writing's contents reflects the actual contents, the issue is for the trier of fact to determine. A leading evidence treatise also stresses that the question of whether a party has offered sufficient evidence to prove the contents of a lost writing is a matter for the trier of fact to decide. 5 Jack B. Weinstein and Margret A. Berger, *Weinstein's Evidence* § 1008[02] (1993). At this stage, Plaintiff has come forward with sufficient evidence to raise a genuine issue of material fact as to whether it has shown the existence and terms of a St. Paul policy by a preponderance of the evidence.

## C. Duty to Defend the New Mexico Claims

■ The obligation of an insurance company to indemnify is independent of its obligation to defend. *Lujan v. Gonzales*, 84 N.M. 229, 233, 501 P.2d 673, 677 (Ct.App.), *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972). An insurer's duty to defend arises out of the nature of the allegations in the complaint filed against the insured. *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 619, 642 P.2d 604, 605 (1982) (citing *American Employers' Ins. Co. v. Continental Ins. Cas. Co.*, 85 N.M. 346, 348, 512 P.2d 674, 676 (1973)). If the allegations on the face of the complaint are "potentially" or "arguably" within the scope of coverage, the insurer is obligated to defend. *Sena v. Travelers Ins. Co.*, 801 F.Supp. 471, 473 (D.N.M.1992); *American General Fire & Cas. Co. v. Progressive Cas. Co.*, 110 N.M. 741, 744, 799 P.2d 1113, 1116 (1990).

■ St. Paul contends it owed no duty to defend the New Mexico Porter claims because those complaints all allege that the molestations occurred before the inception date of any St. Paul policy and the injury was not realized by the New Mexico claimants until after the alleged policy expired. St. Paul urges the Court to adopt the "first encounter" approach to determine when insurance coverage is triggered, under which the insurer on the risk at the time of the first instance of abuse would be liable for all resulting injury. *See, e.g., Interstate Fire &*

*Cas. v. Archdiocese of Portland,* 747 F.Supp. 618 (D.Or.1990). Plaintiff counters that under the "multiple trigger" approach to insurance coverage, St. Paul would be on the risk and since New Mexico has not decided which trigger theory of insurance coverage to adopt, "arguable" or "potential" coverage exists.

■■■ The Court finds it improper to engage in an analysis of which theory of insurance coverage the New Mexico Supreme Court would adopt if confronted with the question. Insurance is fundamentally a matter of contract law. *Farmers Alliance Mut. Ins. Co. v. Bakke,* 619 F.2d 885, 888 (10th Cir.1980). "An insurance contract should be construed as a 'complete and harmonious instrument designed to accomplish a reasonable end.'" *Knowles v. United Servs. Auto Ass'n,* 113 N.M. 703, 705, 832 P.2d 394, 396 (1992) (quoting *Safeco Ins. Co. of America v. McKenna,* 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977)). Further, New Mexico law provides that the reasonable expectations of the insured regarding coverage should be protected. *Sanchez v. Herrera,* 109 N.M. ·155, 159, 783 P.2d 465, 469 (1989). The Court finds it is unreasonable for the Servants to expect this OL & T policy would cover abuse occurring before the policy's inception and where the underlying complaints allege injury manifested after the policy's expiration.

■■■ The test to determine a duty to defend is one of reason—whether the defense sought is for a coverage which the insured desired to purchase and for which the insured paid premiums. The ultimate determination should be one which is fair to all contracting parties. 7C John A. Appelman, *Insurance Law and Practice* § 4683.01 (1979). Plaintiff fails to show that the New Mexico claimants allege any "injury" during the period of St. Paul's policy—either direct injury from an offensive, physical touching or indirect, long-term psychological injury. In

the absence of any alleged injury, the Court finds it unreasonable as a matter of law to conclude that St. Paul had a duty to defend the New Mexico claims. This is not a situation in which the insurer used qualifications, limitations or restrictions in a policy that are contrary to the reasonable expectations of a policyholder. Disallowing coverage would not give St. Paul an unconscionable advantage. Robert E. Keeton & Alan I. Widiss *Insurance Law* § 6.3(b) (1988).

### D. Duty to Defend the Minnesota Claims

■■■ Unlike the New Mexico claimants, the Minnesota John Does allege they were abused sometime during the period of St. Paul's alleged policy. The Court must determine whether the OL & T policy offered by Plaintiff provides arguable or potential coverage.[1]

■■■ The operative language in the alleged St. Paul policy is identical to the Great American policy at issue in Great American's motion for summary judgment and Plaintiff's cross-motion for partial summary judgment. As analyzed *infra,* New Mexico has not decided the scope of coverage of an OL & T policy. "Where coverage under the policy is in some doubt, the proper remedy, under New Mexico law, is for the insurer to seek a court determination as to non-coverage of the primary action; mere unilateral determination that there is no duty to defend is not an acceptable remedy for the insurer." *Peterson v. Transamerica Insurance Co.,* Civil No. 86–0915 JB (D.N.M. filed February 11, 1988) (citing *Foundation Reserve Ins. Co. v. Mullenix,* 97 N.M. 618, 642 P.2d 604 (1982)). Where as here, coverage is in doubt because of an uncertainty about the law, the Court finds no reason for treating the insurer's obligations differently than if the uncertainty concerned factual issues. The duty to defend is not determined *after* the issue of liability has been finally litigated; otherwise, the stip-

---

1. Depending upon their position on a particular issue, the parties alternatively endorse or refute the OL & T specimen policy as evidence of the terms of the lost policy. At this stage, the Court will be guided by the specimen policy language. This case is unlike *Star Steel Supply v. USF & G,* 186 Mich.App. 475, 465 N.W.2d 17 (1990), which rejected the use of standard forms as evidence of

policy terms because too many forms were in use by the insurer during the relevant time period. Here, St. Paul used only three general liability coverage forms during the time in question. It is possible, however, that further discovery may cast doubt on the propriety of using the specimen policy as proof of the terms of the actual policy.

ulation in the alleged St. Paul policy for defense of even "groundless" actions would be of little value. *See Danek v. Hommer*, 28 N.J.Super. 68, 100 A.2d 198, 203–04 (App. Div.1953) (insurer had duty to defend where New Jersey had not yet decided whether a worker's compensation award barred an action for negligence against an employer brought by spouse of injured worker). Therefore, the Court concludes that St. Paul had a duty to defend the Minnesota claims.

## CATHOLIC MUTUAL'S MOTION FOR SUMMARY JUDGMENT

Catholic Mutual insured Plaintiff under a series of Comprehensive General Liability policies from 1978 through 1993. The underlying tort actions brought by the John Does in Minnesota and New Mexico allege the sexual abuse by Porter occurred from 1968 through 1970. Further, the John Does all claim that in 1992 they became aware of the existence of their psychological injuries and/or their connection to the sexual molestation perpetuated by Porter. Therefore, it is undisputed that Catholic Mutual did not insure the Servants during the period of time when the abuse occurred, but did insure the Servants when the tort plaintiffs claim they became aware of their injuries. Count III of Plaintiff's Amended Complaint alleges Catholic Mutual breached its duties to defend and indemnify Plaintiff.

### A. Duty to Defend

An insurer may justifiably refuse to defend only where the allegations of the complaint fall completely outside policy limits. *Peterson v. Transamerica Ins. Co.*, Civil No. 86–0915 JB (D.N.M. filed February 11, 1988). If any portion of the insurance policy is construed as ambiguous as to the duty to defend a particular claim, doubts must be resolved in favor of the Servants. *Id.*

The relevant portions of Catholic Mutual's policy state as follows:

[Catholic Mutual] will pay on behalf of the assured all sums which the assured shall become legally obligated to pay as damages because of bodily injury ... to which this coverage applies, caused by an occurrence ... and [Catholic Mutual] shall have the right and duty to defend any suit seeking damages on account of such bodily injury ... even if any of the allegations of the suit are groundless, false or fraudulent. ...

"[B]odily injury" means bodily injury, sickness or disease sustained by any person which occurs during the certificate period including death at any time resulting therefrom.

"[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Assured.

The issue before the Court on Catholic Mutual's duty to defend is as follows: considering the policy as a whole, did the Porter plaintiffs allege "bodily injury" potentially within coverage so as to trigger Catholic Mutual's duty to defend?

Catholic Mutual's position is that as a matter of law, "bodily injury" occurred for purposes of insurance coverage at the time of initial bodily contact, and the insurer on the risk at the time of the "first encounter" of abuse is liable for all damages. Plaintiff urges the Court to reject the "first encounter" theory of coverage. Further, the definition of "bodily injury" is ambiguous, argues Plaintiff, and since Catholic Mutual failed to defend, it is liable for any reasonable, good faith settlement entered into between the Servants and the Porter plaintiffs, regardless of whether or not actual coverage existed.

Catholic Mutual correctly argues that all prior court decisions addressing the trigger of insurance have limited coverage either to the policy in effect at the time of the "first encounter" of abuse, or in one case, to the policies in effect during the entire period in which sexual abuse occurred. However, this precedent is not dispositive of the issue before the Court.

The "first encounter" rule was first adopted in sexual abuse cases in *Interstate Fire & Cas. Co. v. Archdiocese of Portland*, 747 F.Supp. 618 (D.Or.1990). Under a "first encounter" approach, the insurer at risk at the time of the first encounter with a child is liable for all injuries resulting from the mo-

lestation of that child, even if the abuse continues beyond the policy term, because the "injury" occurred at the time of the "first encounter." *Portland* was a dispute between insurers focusing on whether each incident of molestation over a four-year period was a separate "occurrence" under the terms of the policy giving rise to separate claims.. The court held the continuing negligence of the Archdiocese in hiring and supervising the priest constituted a single "occurrence." Most relevant for this Court, however, was that the parties agreed bodily injury occurred at the time of the first molestation. Similarly, in *May v. Maryland Cas. Corp.,* 792 F.Supp. 63 (E.D.Mo.1992), the parties agreed that the "first encounter" rule governed since the injury occurred with the first abusive act. *Accord Lee v. Interstate Fire & Cas. Co.,* 826 F.Supp. 1156. (N.D.Ill.1993). In *Diocese of Lafayette v. Arthur J. Gallagher & Co.,* Civil No. 88–0289 (W.D.La. filed May 2, 1991), while the parties did not agree the "first encounter" rule governed, neither did any party contend, as here, that injury occurred when the abused children realized the nature of their injuries. The "first encounter" rule was rejected in *Diocese of Winona v. Interstate Fire & Cas. Co.,* 841 F.Supp. 894 (D.Minn.1992). The court found that damage in a sex abuse case can be caused by the continuous nature of the abuse, and therefore, all insurers providing coverage during the entire period of abuse were on the risk.

These decisions are not dispositive of the issue before this Court. The dispute between Catholic Mutual and the Servants is when did injury occur to the Porter plaintiffs. In *Portland, May* and *Lee,* the parties agreed the injury occurred with the first molestation. Further, rather than addressing *when* injury occurred, all the above cases grappled with *how many* "occurrences" took place when there were multiple instances of abuse over a period of years.

 In deciding whether an insurer is obligated to defend, the Court must determine whether the injured party's complaint contains allegations or state facts that bring the case within the coverage of the policy. *Bernalillo County Deputy Sheriffs Ass'n v.*

*County of Bernalillo,* 114 N.M. 695, 697, 845 P.2d 789, 791 (1992). If the allegations of the complaint *"clearly fall* outside the provisions of the policy, neither defense nor indemnity is required." 114 N.M. at 697, 845 P.2d at 791 (emphasis added). Each of the complaints filed against the Servants in both the Minnesota and New Mexico Porter cases contained . the allegation that the Porter plaintiffs were "unable to perceive or know the existence or nature of their psychological injuries and/or their connection to the sexual molestation perpetrated on them" until years after the instances of abuse.

 John Does' allegation does not "clearly fall outside" the provisions of the policy. Whether the realization of injury alleged by Does constitutes "bodily injury" as defined by Catholic Mutual is not a clear-cut matter. It raises a legal question to be decided by a court of law, not unilaterally by the insurer. Under New Mexico law, if a complaint states facts within a policy's coverage, an insurer has a duty to defend even if its own investigation reveals that the claim sued upon is not in fact covered. *Foundation Reserve Ins. Co. v. Mullenix,* 97 N.M. 618, 620, 642 P.2d 604, 606 (1982). If an insurer must defend even when it possesses proof that the facts of the underlying claim do not fall within the policy, then an even stronger case exists for requiring the insurer to defend where the legal significance of a complaint is in doubt. *See Western World Ins. v. Harford Mut. Ins. Co.,* 784 F.2d 558, 562 (4th Cir.1986) (an insurer should not be allowed to draw its own conclusion as to the legal significance of an individual's complaint). Catholic Mutual's duty to defend is broad, extending to suits for injury where the allegations are "groundless, false or fraudulent." Catholic Mutual Relief Society, Liability Coverage at p. 3. Catholic Mutual's broad obligations and the nature of the issue raised by the John Does' allegation, taken together, create some doubt as to the existence of coverage. Catholic Mutual's proper course of action, therefore, was to seek a court determination of non-coverage of the primary action; its unilateral determination of non-coverage and no duty to defend is not a proper remedy for an insurer. *Peterson v.*

*Transamerica Ins. Co.,* Civil No. 86–0915 JB at p. 5 (D.N.M. filed February 11, 1988) (citing *Foundation Reserve Ins. Co. v. Mullenix,* 97 N.M. 618, 642 P.2d 604 (1982)). The Court finds Catholic Mutual breached its duty to defend.

## B. Duty to Indemnify

▆▆ The Servants and Defendants John Does argue strongly that if the Court concludes an insurer breached its duty to defend, the insurer becomes liable for any reasonable, good faith settlement entered into between the Servants and the John Does and is estopped from arguing no coverage exists. The Court disagrees with the Servants' and John Does' interpretation of *State Farm Fire & Cas. Co. v. Price,* 101 N.M. 438, 684 P.2d 524 (Ct.App.1984).

*Price* states that "[w]hen an insurance company fails to defend after a demand, it suffers serious consequences." 101 N.M. at 445. However, *Price* did not state that these "serious consequences" include losing the right to argue coverage. *Price* specifically stated "these consequences" include loss of the right to claim that the insured breached policy provisions, failed to cooperate, failed to forward suit papers and settled without the insurer's consent. *Id.* One of the issues in *Price* was State Farm's contention that Price breached the insurance contract by failing to cooperate with it and failing to deliver a copy of the summons or complaint. The trial court agreed that Price failed to cooperate and also voluntarily assumed the obligation to pay the judgment by settling without notifying State Farm. 101 N.M. at 444, 684 P.2d at 530. The Court of Appeals found State Farm could not assert these defenses because it breached the duty to defend.

▆▆ Plaintiff ' and Defendants John Does also rely on *American General Fire & Cas. Co. v. Progressive Cas. Co.,* 110 N.M. 741, 799 P.2d 1113 (1990). But as in *Price,* the New Mexico Supreme Court did not hold the insurer lost the right to argue coverage after breaching the duty to defend. Some courts agree with position of Plaintiff and the John Does. *See e.g. Clemmons v. Travelers Ins. Co.,* 88 Ill.2d 469, 58 Ill.Dec. 853, 430 N.E.2d 1104 (1981); *Missionaries of Co. of*

*Mary, Inc. v. Aetna Cas. & Surety Co.,* 155 Conn. 104, 230 A.2d 21 (1967). *Missionaries* reasoned that an insurer who fails to defend is properly estopped from denying coverage because by breaching its duty under one part of the insurance contract, the insurer should not be allowed to enforce another part of the contract to its complete protection. *Missionaries,* 230 A.2d at 26. The Court finds such reasoning unpersuasive. Applying the principle of estoppel is incorrect because in refusing to defend a claim, the insurer makes no misrepresentation on which the insured relies to its detriment. The better approach is found in *Polaroid Corp. v. Travelers Indemnity Co.,* 414 Mass. 747, 610 N.E.2d 912 (1993). Where an insurer unjustifiably refuses to defend, it has breached the insurance contract and normal contract damages principles should be applied. *Id.* 610 N.E.2d at 921. The injured party in a contract breach is entitled to receive what would have been obtained had there been no breach. By finding the insurer has a duty to indemnify as a penalty for refusing to defend, even if no coverage exists, the court has improperly enlarged the bargained-for coverage. *Servidone Const. Corp. v. Security Ins. Co. of Hartford,* 64 N.Y.2d 419, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444 (1985). *Accord Afcan v. Mutual Fire, Marine & Inland Ins. Co.,* 595 P.2d 638 (Alaska 1979); *Timberline Equip Co. v. St. Paul Fire & Marine Ins. Co.,* 281 Or. 639, 576 P.2d 1244 (1978); *Fireman's Fund Ins. Co. v. Rairigh,* 59 Md.App. 305, 475 A.2d 509 (1984); *Hirst v. St. Paul Fire & Marine Ins. Co.,* 106 Idaho 792, 683 P.2d 440 (Ct.App.1984).

Finally, Plaintiff cites this Court's decision in *Peterson v. Transamerica Ins. Co.,* Civil No. 86–0915 JB (D.N.M. filed August 16, 1988). The Court did not issue a blanket ruling that insurers breaching the duty to defend are estopped from arguing coverage questions. The Court directs Plaintiff to an earlier Memorandum Opinion and Order in *Peterson* in which this Court rejected the insured's argument that Transamerica waived its right to argue no coverage existed based on policy exclusions when it wrongfully refused to defend. *Peterson v. Transamerica Ins. Co.,* Civil No. 86–0915 JB at p.

17, n. 6 (D.N.M. filed February 11, 1988). Therefore, the Court concludes it must consider whether coverage exists under Catholic Mutual's policy.

■ The Court finds "bodily injury" as defined by Catholic Mutual does not create coverage for the realization of injury alleged by the John Does. The policy defines "bodily injury" as including three types of harm: "bodily injury, sickness or disease." As to the first type, bodily injury, the mental realization that one suffered injuries due to sexual abuse does not constitute an injury to the body. Injury to the body occurred at the time of the offensive touching by Porter. As to the second type of harm, "sickness" is an "ailment of such a character as to affect the general soundness and health." *Black's Law Dictionary* 1238 (5th ed. 1979). The realization of psychological injury and the connection between the injury and sex abuse does not constitute a "sickness." The effects of childhood sexual abuse, both initial and long-term, are varied and severe. Adult survivors commonly exhibit signs of depression, anxiety, poor self-esteem and may engage in self-destructive behavior. Rebecca L. Thomas, *Adult Survivors of Childhood Sexual Abuse and Statutes of Limitations: A Call for Legislative Action,* 26 Wake Forest L.Rev. 1245 (1991). Such psychological and emotional injuries may be "sickness" as defined by the policy. But the underlying complaints do not allege these harms occurred during the policy period.[2] Instead, allegedly occurring in 1992 during Catholic Mutual's policy period was a mental process—the realization of harm and its cause. This "realization" does not reasonably equate with "sickness." Similarly, as to "disease," the third enumerated aspect of "bodily injury," the realization of psychological harm does not constitute the "deviation from the healthy or normal condition of any of the functions or tissues of the

body." *Black's Law Dictionary* 420 (5th ed. 1979).

Taking a step back from the individual words and examining the policy as a "complete and harmonious instrument designed to accomplish a reasonable end," *Knowles v. United Servs. Auto Ass'n,* 113 N.M. 703, 705, 832 P.2d 394, 396 (quoting *Safeco Ins. Co. of America v. McKenna,* 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977)), an insured cannot reasonably expect a policy to cover injury originating years before the policy's inception. Insurance premiums undoubtedly do not reflect such risks and the Court can only speculate as to the enormous increase in premiums were such pre-policy injury causing events to be covered.

In conclusion, since the underlying complaints do not allege "bodily injury" occurred during the period of coverage, Catholic Mutual had no duty to indemnify under the policy.

### GREAT AMERICAN'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTIONS OF PLAINTIFF AND DEFENDANT JOHN DOES FOR PARTIAL SUMMARY JUDGMENT

Great American insured Plaintiff under two consecutive one-year policies during the period February 1, 1968, through February 1, 1970. Plaintiff cannot produce the policies nor were copies retained by Great American. Great American, however, possessed some information about the policies, and used its Management Information Files to determine that the two policies provided Owner's, Landlord's and Tenant's (OL & T) coverage. All parties agree the coverage was OL & T.

Based on the allegations of the New Mexico Porter plaintiffs, Great American elected to defend those suits. When the Minnesota

---

2. The complaints in the New Mexico actions state:

The circumstances including the nature of the sexual molestation, the trust conferred upon Porter by Plaintiffs, the power and authority Porter asserted over Plaintiffs as a result of his position as a Roman Catholic priest, and Plaintiffs' tender years at the time of the sexual molestation caused Plaintiffs to develop various psychological coping mechanisms in-

cluding developing great guilt, shame, embarrassment, self blame, denial, repression and disassociation from their experiences. Because of these psychological coping mechanisms, Plaintiffs were unable to perceive or know the existence or nature of their psychological injuries and/or their connection to the sexual molestation perpetuated by Porter until 1992.

The Minnesota complaints aver similarly.

actions were filed, responsible officials with Great American decided to provide a defense. Great American personnel in Minnesota were instructed to retain counsel for the Servants, but that direction was never carried out because Great American "dropped the ball." Great American's Memorandum in Opposition to Cross–Motions for Partial Summary Judgment at p. 19.

Great American seeks summary judgment on the grounds that as a matter of law its OL & T policy does not respond to off-premises sexual abuse. Plaintiff and Defendant John Does filed cross motions for partial summary judgment seeking an order that Great American had a duty to defend and indemnify the Servants.

### A. Duty to Defend the Minnesota Claims

The OL & T policy issued by Great American states in relevant part:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury ... caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto....

Courts are split on whether an OL & T policy covers incidents occurring off the insured's premises. *Compare American Empire Surplus Lines Inc. v. Bay Area Cab Lease Inc.*, 756 F.Supp. 1287 (N.D.Cal.1991) (OL & T intended to address the typical "slip and fall" case on the premises) *with McGinnis v. Fidelity & Cas. Co. of N.Y.*, 276 Cal. App.2d 15, 80 Cal.Rptr. 482 (Cal.Ct.App. 1969) (where accident off-premises was proximately caused by negligent sale of gunpowder on-premises, OL & T responds). The issue has not been addressed by New Mexico's courts.

Not only is the scope of an OL & T policy unclear with respect to off-premises incidents, but the underlying complaints allege the Servants' negligence occurred *on-premises* in the form of the Servants releasing Porter from psychotherapy, acquiescing in his placement as a parish priest and failing to warn parishioners of Porter's history of pedophilia.

The allegations of on-premises negligence, together with the uncertainty about the scope of OL & T coverage in New Mexico create "arguable" coverage. *American General Fire & Cas. Co. v. Progressive Cas. Co.*, 110 N.M. 741, 744, 799 P.2d 1113, 1116 (1990). The duty to defend is determined at the time suit is brought, not at the conclusion of litigation. 7C John A. Appelman, *Insurance Law and Practice* § 4684 (1979). It is noteworthy that at the time the Minnesota suits were filed, Paul Robbins, Manager of Great American's Minnesota claims office wrote a memo dated November 24, 1992, suggesting a defense be provided. When questioned as to why the decision to defend was never accomplished, Mr. Robbins stated, "I just think the ball was dropped." Robbins Deposition at p. 124. In addition to Mr. Robbins, John Keefe, Vice–President of Claims, also concluded a defense should have been provided based upon the information known by Great American in 1992. Keefe Deposition at p. 67–68. Only when it can be concluded as a matter of law that there is no basis upon which the insurer might be obligated to indemnify the insured is the insurer relieved from its duty to defend. 7C John A. Appelman, *Insurance Law and Practice* § 4684.01 (1993 Supp.). Since it could not be concluded as a matter of law at the time the actions were brought that there was no basis for indemnity, Great American had a duty to defend.

### B. Duty to Indemnify

The parties dispute the implication of an insurer breaching its duty to defend. As discussed *supra*, the Court concludes that Great American is not estopped from arguing coverage because a breach of the duty to defend cannot create coverage where none actually exists. *Servidone Const. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444 (1985). Therefore, the Court must decide whether coverage exists under Great American's OL & T policy.

A guiding principle of New Mexico insurance law is that any ambiguity in a policy must be liberally construed in favor of

the insured. *Thompson v. Occidental Life Ins. Co.,* 90 N.M. 620, 621, 567 P.2d 62, 63, *cert. denied* 91 N.M. 4, 569 P.2d 414 (1977). A clause is ambiguous if it is "reasonably and fairly susceptible of different constructions." *Knowles v. United Services Auto Ass'n,* 113 N.M. 703, 705, 832 P.2d 394, 396 (1992) (quoting *Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987)). Further, New Mexico provides that the reasonable expectations of the insured regarding insurance coverage should be protected. *Sanchez v. Herrera,* 109 N.M. 155, 159, 783 P.2d 465, 469 (1989).

Great American cites a leading insurance treatise; 11 George J. Couch, *Couch Cyclopedia of Insurance Law* § 44:379 (1982) for the proposition that OL & T policies are limited to protection against liability arising from the "condition or use of the building as a building...." *Id.* at p. 551. The Court does not take so limited a view of the OL & T policy in question. Quite simply, if Great American intended its insured to understand that the policy only covered the physical condition of the Servants' facilities, it should have so stated. At a minimum, it should have omitted the language "and all operations necessary or incidental thereto ..." and limited coverage to accidents arising out of the "ownership, maintenance or use of the insured premises...." Any accident resulting solely from the physical condition of the facilities would be included within the more limited language. Great American's contention makes superfluous the language "and all operations necessary or incidental thereto...."

Great American also emphasizes the off-premises situs of the Porter plaintiffs' alleged injuries. The Court does not find this factor to be determinative of coverage. Coverage may exist under an OL & T policy for an off-premises accident. *State Auto. & Cas. Underwriters v. Beeson,* 183 Colo. 284, 516 P.2d 623 (1973) (en banc). In *Beeson,* a child on the street was struck by keys for a pickup truck which were thrown out of a third floor apartment house window. The keys were thrown by the apartment's real estate manager and the pickup truck was to be used to transport rugs from one apart-

ment house owned by the insured to another. The court found that the keeping of the keys by the manager, and the act of throwing them out the window, were "incidental" to the operation of the apartments. Therefore, even though the injury occurred off-premises, the OL & T policy provided coverage. *Beeson,* 516 P.2d at 625. Conversely, an on-premises injury does not always mandate coverage. In *Reznichek v. Grall,* 150 Wis.2d 752, 442 N.W.2d 545 (App.1989), a bowling alley proprietor's OL & T policy did not cover his negligent transmission of genital herpes to a sixteen-year old girl as a result of sexual encounters occurring on the bowling alley premises. The court reasoned there was no causal relationship between the tort plaintiff's injury and the ownership, maintenance or use of the premises as a bowling alley. *Id.* 442 N.W.2d at 548. *Beeson* and *Reznichek* suggest that the key is not whether the injury occurs on or off-premises; rather, it is whether there exists a sufficient connection between the injury and the insured's premises, including necessary or incidental operations on the premises.

Great American contends that if an off-premises accident is to be covered under OL & T insurance, the injury must occur in the course of an operation "directly" related to the ownership, maintenance or use of the insured building. Great American's Memorandum in Opposition to Cross–Motions for Partial Summary Judgment at p. 5. A "direct" relationship is too high a standard given the policy's use of the word "incidental," which means something nonessential or subordinate. *Webster's Third New International Dictionary* 1142 (1976). So long as a reasonable causal connection existed between the ownership, maintenance or use of the premises and the injury, Great American's policy provides coverage. *Cf. Sanchez v. Herrera,* 109 N.M. 155, 783 P.2d 465 (1989) (auto insurance policy responds if there is a reasonable causal connection between the use of the auto and the injury); *American General Fire & Cas. Co. v. Progressive Cas. Co.,* 110 N.M. 741, 799 P.2d 1113 (1990) (injury occurring when insured disembarking in a wheelchair onto a ramp attached to his van was "reasonably connected" to the use of the

vehicle and within the scope of auto insurance policy). While *Sanchez* and *American General* deal with automobile insurance policies, the Court finds it proper to apply the "reasonable causal connection" test generally.

The underlying complaints against the Servants allege negligence in its treatment of Porter.[3] The alleged negligence occurred within the Servants' insured facilities at Jemez Springs. Further, since one of the missions of the Servants is the rehabilitation of pedophiliac priests, the alleged negligence details activities which were at least an "incidental" if not a "necessary" use of the premises. This distinguishes the case at bar from *Reznichek*, 442 N.W.2d at 545.

■ Next, the Court must consider whether the injury "arose" out of the use of the premises, that is, whether there was a causal connection. "The words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'" *Baca v. New Mexico State Highway Dept.*, 82 N.M. 689, 692, 486 P.2d 625, 628 (Ct.App.1971). While *Baca* and the cases it relies on construed automobile insurance policies, the Court finds no reason to define the same words more restrictively in an OL & T policy. The insurance interpretation rule, stating that if a policy is susceptible of more than one construction, it will be construed in a manner most favorable to the insured, applies equally to all types of insurance. The Court concludes the injuries suffered by the Porter plaintiffs did "flow from" the alleged negligence of the Servants. Great American correctly points out the Servants' acts were not the direct, immediate cause of the abuse. However, a sufficient nexus exists to find the injuries flowed from the Servants' alleged negligence.

Great American places primary reliance on *American Empire Surplus Lines Ins. v. Bay*

*Area Cab Lease, Inc.*, 756 F.Supp. 1287 (N.D.Cal.1991), holding that there is no coverage under an OL & T policy for off-premises sexual abuse by an employee. A driver employed by Bay Area Cab molested a child in his cab. The only issue was whether the negligent hiring and/or supervision of the employee was covered under an OL & T policy containing language identical to the policy before this Court. The court found OL & T policies were intended to address the typical "slip and fall" case. *Id.* at 1289. This Court rejects the result in *Bay Area Cab* because it fails to adequately consider the words of the policy. Further, unlike *Bay Area Cab*, more than a "negligent hiring" has been alleged against the Servants.

In conclusion, the Court finds Great American breached its duty to defend the Minnesota claims and also had a duty to indemnify those claims.

Wherefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that St. Paul's motion for summary judgment that it had no duty to defend the Servants in any of the underlying actions, be and hereby is, denied.

**IT IS FURTHER ORDERED** that St. Paul's motion for partial summary judgment that it had no duty to defend the Servants in the underlying New Mexico actions be, and hereby is, granted.

**IT IS FURTHER ORDERED** that Catholic Mutual Relief Society of America's motion for summary judgment that it had no duty to defend be, and hereby is, denied.

**IT IS FURTHER ORDERED** that Catholic Mutual Relief Society of America's motion for summary judgment that it had no duty to indemnify be, and hereby is, granted.

**IT IS FURTHER ORDERED** that Great American's motion for summary judgment be, and hereby is, denied.

**IT IS FURTHER ORDERED** that Plaintiff's and Defendants John Does' cross-mo-

---

3. Specifically, the claims asserted against the Servants allege it negligently and recklessly: (a) failed to inform law enforcement officials of Porter's sexual misconduct; (b) failed to instruct and ensure that Porter's superiors within the church would remove his faculties to continue functioning as a Roman Catholic priest; (c) released Porter from psychotherapy; (d) acquiesced to Porter's placement as a parish priest; and (e) failed to properly warn the children of the parishes where Porter was placed. Minnesota Complaint at paragraphs 48–50.

tions for partial summary judgment against Great American be, and hereby are, granted.